THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WALTER STEWART, Appellant.

*Opinion filed March 23, 1988.—Rehearing denied October 3, 1988.*

370

CUNNINGHAM, J., took no part.

Charles M. Schiedel, Deputy Defender, of the Office of the State Appellate Defender, of Springfield, and Charles Hoffman, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

The defendant, Walter Stewart, brings this appeal from a dismissal of his petition for post-conviction relief without an evidentiary hearing in the circuit court of Cook County. At his original trial, the defendant entered pleas of guilty to charges of murder, attempted murder and armed robbery. After the pleas were accepted and judgments were entered, the prosecution sought the death penalty. Following a bench sentencing hearing, the trial judge sentenced the defendant to death. A 30-year sentence for the attempted murder and armed robbery was also imposed. A post-trial motion to withdraw the guilty pleas and vacate the convictions was denied.

On direct appeal, this court affirmed the convictions and sentences. (*People v. Stewart* (1984), 101 Ill. 2d 470.) A petition for rehearing in this court was denied, and

the Supreme Court denied *certiorari*. *Stewart v. Illinois* (1984), 469 U.S. 920, 83 L. Ed. 2d 237, 105 S. Ct. 303.

The defendant then filed a petition seeking relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122–1 *et seq.*). The circuit court dismissed the petition without an evidentiary hearing, and a direct appeal to this court followed. 107 Ill. 2d R. 651.

A post-conviction proceeding is not one in which a defendant's guilt or innocence is determined, but rather is limited to consideration of constitutional issues which have not previously been reviewed. (*People v. Gaines* (1984), 105 Ill. 2d 79.) Thus, the facts relating to the underlying offenses and prior proceedings will be set forth only as they are relevant to the issues presented.

The scope of post-conviction review is limited by the doctrines of *res judicata* and waiver. In essence, post-conviction proceedings are limited to issues which have not been, and could not have been, previously adjudicated. Put another way, all issues actually decided on direct appeal are *res judicata*, and all those which could have been presented but were not are deemed waived. (*People v. Gaines* (1984), 105 Ill. 2d 79, 88-89; *People v. French* (1970), 46 Ill. 2d 104, 107.) We find that several of the issues raised by the petitioner are barred by these doctrines.

The defendant's first assertion is that his guilty plea was involuntary in that, at the time of the plea, he did not understand the nature of the charges to which he was pleading guilty, he did not understand that he had a right to persist in a not-guilty plea, and his decision to plead guilty was the product of psychological pressure and confusion.

The detailed circumstances surrounding the plea are described in our opinion disposing of the defendant's direct appeal and need not be reiterated here. (*People v. Stewart* (1984), 101 Ill. 2d 470.) In that opinion, we re-

jected the claim that the guilty plea proceedings did not satisfy the requirements of due process or of our Rule 402 (107 Ill. 2d R. 402), because the defendant was adequately admonished by the trial judge. (101 Ill. 2d 470, 483-87.) Thus, the voluntariness issue concerning the guilty plea is barred. *People v. Kubat* (1986), 114 Ill. 2d 424; *People v. Jones* (1985), 109 Ill. 2d 19.

The defendant submits, however, that *res judicata* should not apply because the instant claim is distinguishable from the claim raised on direct appeal. His argument runs as follows. On direct appeal, he did not raise the issue of the *actual* involuntariness of his guilty plea. Rather, he challenged only the *sufficiency of the record* of the plea proceeding to meet the requirements of *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709. Further, the *Boykin* issue concerned only the on-the-record proceedings in the trial court. The issue raised here at the post-conviction stage, defendant argues, relates to off-the-record matters such as the defendant's actual, subjective knowledge, understanding and emotional state. The defendant concludes that these matters, being off-the-record, could not have been raised on direct appeal, and hence are not *res judicata*.

Whatever the merits of the defendant's *res judicata* analysis may be, his claim of involuntariness must fail for another fundamental reason. He failed to include this argument in his motion to vacate his guilty plea, and therefore the issue has been waived, regardless of whether *res judicata* is involved.

Supreme Court Rule 604(d), which relates to appeals from judgments entered upon pleas of guilty, provides, in pertinent part:

"(d) Appeal by Defendant from a Judgment Entered upon a Plea of Guilty. No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed,

> files in the trial court a motion to withdraw his plea of guilty and vacate the judgment. The motion shall be in writing and shall state the grounds therefor. *When the motion is based on facts that do not appear of record it shall be supported by affidavit.* \*\*\* Upon appeal *any issue not raised by the defendant in the motion to withdraw the plea of guilty and vacate the judgment shall be deemed waived.*" (Emphasis added.) 107 Ill. 2d R. 604(d).

Thus, by its explicit terms, Rule 604(d) states that issues not preserved in a motion to vacate a guilty plea are waived. The waiver rule applies to post-conviction proceedings as well as to appeals. (*People v. Ward* (1971), 48 Ill. 2d 117, 120-21.) Also, the rule specifically allows for introduction of extra-record facts by affidavit, so the defendant's "off-the-record" argument is unavailing.

Any allegations relating to the defendant's subjective confusion or lack of understanding could have been supported by affidavits at the motion-to-vacate stage. Because they were not, we find that the issue has been waived.

The defendant next contends that he was precluded from exercising his right to testify at his sentencing hearing because he was led to believe that he had forfeited that right by statements of the trial judge. Further, he asserts that this misconception was not corrected by admonitions from the judge or by advice from his defense counsel. We find, however, that this claim must also be treated as waived.

After the defendant's sentencing hearing was concluded, he obtained new counsel, who filed a lengthy post-trial motion to withdraw the guilty plea and vacate the death sentence. Some 11 different grounds for vacation of the sentence were raised. Many of these same claims were later presented in the defendant's direct appeal. The instant claim, that the defendant was unaware of his right to testify at his sentencing hearing, was not

among the issues raised. The briefs and record do not suggest, nor can we conceive, any reason why this claim could not have been preserved at the post-trial stage. Therefore, we find the matter waived.

The defendant next complains that the discretion vested in the State's Attorney to request a death penalty hearing (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(d)) has resulted in an uneven and unconstitutional application of our death penalty statute.

The trial court, in dismissing the post-conviction petition without an evidentiary hearing, stated that the matters set forth in count III related to the death penalty statute itself and its operation, and were previously passed on by this court. The State argues that the question of the validity of the statutory grant of prosecutorial discretion was raised by the defendant in the trial court following his conviction and on direct appeal in this court, and asserts this issue is barred in a post-conviction proceeding by *res judicata*. (See *People v. Jones* (1985), 109 Ill. 2d 19.) The defendant contends that he is not raising the question of the facial constitutionality of the statute, but instead contends it is unconstitutional as applied.

In this post-conviction proceeding, the defendant, on various issues, has attempted to divide the constitutional question into separate components and, in order to avoid the *res judicata* bar, claims that on direct appeal only component A of the question was litigated, whereas in the post-conviction proceeding he is litigating component B. We have noted above the use of this tactic as to other issues. The same tactic has been employed with respect to the question of prosecutorial discretion. We have noted above that when a defendant has taken an appeal from a judgment of conviction, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court and that all other issues which could

have been presented to the reviewing court, if not presented, are waived. *People v. Jones* (1985), 109 Ill. 2d 19, 24; *People v. Kamsler* (1968), 39 Ill. 2d 73, 74.

The defendant argues, as he did before, that *res judicata* is not applicable to this issue because off-the-record materials, upon which the present contention is based, were developed long after the defendant's direct appeal had been decided. It appears that this argument is based on the fact that certain information concerning the practices in various State's Attorneys' offices with respect to seeking the death penalty was gathered after the defendant's direct appeal. The Chicago Lawyer, a Chicago-based newspaper, sent letters to the 102 State's Attorneys in this State requesting information under our Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, par. 201 *et seq.*). Responses were received from 87 State's Attorneys' offices. Copies of these responses were filed in the trial court in connection with defendant's motion for discovery in this case. We will discuss these responses later.

Also filed in support of the post-conviction petition were three affidavits. One affidavit was by the attorney who has represented the defendant in the post-conviction proceeding and attempted to summarize the responses from the State's Attorneys' offices to the Chicago Lawyer's request under the Freedom of Information Act. Another affidavit was by the deputy defender of the Chicago office of the State Appellate Defender, and refers to cases in Cook County in which the death penalty "could have been sought but was not." The third affidavit was by an assistant defender from the office of the State Appellate Defender for the Third Judicial District, and relates to the situation in the Third Judicial District with regard to cases in which the death penalty was and was not sought. There is no explanation given by the defendant as to why affidavits similar to the last two

mentioned could not have been given as to conditions in each of the five judicial districts and as to the State as a whole at the time of the direct appeal in this case. The last two affidavits do not refer to and are not based on information gathered by the Chicago Lawyer. Also, the possibility of inconsistent practices in requesting a death penalty hearing in the 102 counties of this State had been called to the attention of the bar long before the direct appeal in this case. (See *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 544 (Ryan, J., joined by Goldenhersh, C.J., and Clark, J., dissenting).) Thus the issue presented by the post-conviction proceeding could have been raised on direct appeal. The responses by the State's Attorneys to the request by the Chicago Lawyer contain information essentially the same as that contained in the last two affidavits referred to above.

It is unclear whether the trial court dismissed the post-conviction petition without a hearing because the issue presented could have been raised on direct appeal, but was not, or whether the petition was dismissed because the issue had been before this court previously and was decided. In *Cousins*, this court recognized that our death penalty statute vests in the prosecutor discretion in requesting a death penalty hearing. In *Cousins* this court also addressed the possibility that this discretion may be exercised unevenly by the various prosecutors. (77 Ill. 2d at 540.) In addressing this possibility in *Cousins*, the court quoted at length from *Gregg v. Georgia* (1976), 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909, in which Justice Stewart referred to the exercise of discretionary authority at the prosecution stage, at the trial stage by the jury, and following conviction and sentencing by the Governor. Justice Stewart pointed out that nothing suggests that the decision at any of these three stages to afford a particular defendant mercy violates

the Constitution. 428 U.S. at 199, 49 L. Ed. 2d at 889, 96 S. Ct. at 2937.

Considering the three affidavits and the responses from the various State's Attorneys' offices to the Chicago Lawyer's request for information, we find that these documents disclose only that various State's Attorneys have exercised the discretion authorized by the statute, which this court upheld in *Cousins*. The prosecutorial discretion may not have been guided by the same considerations in all cases, and may not have been uniformly exercised; however, this does not indicate that the discretion has been exercised in an arbitrary or capricious manner, or that its exercise has resulted in the death penalty being wantonly and freakishly imposed. (*Furman v. Georgia* (1972), 408 U.S. 238, 310, 33 L. Ed. 2d 346, 390, 92 S. Ct. 2726, 2763.) In addressing the defendant's contention that the discretion has been unconstitutionally exercised, language of Mr. Justice White in *Gregg v. Georgia* is particularly appropriate:

"Petitioner's argument that there is an unconstitutional amount of discretion in the system which separates those suspects who receive the death penalty from those who receive life imprisonment, a lesser penalty, or are acquitted or never charged, seems to be in final analysis an indictment of our entire system of justice. Petitioner has argued, in effect, that no matter how effective the death penalty may be as a punishment, government, created and run as it must be by humans, is inevitably incompetent to administer it. This cannot be accepted as a proposition of constitutional law. Imposition of the death penalty is surely an awesome responsibility for any system of justice and those who participate in it. Mistakes will be made and discriminations will occur which will be difficult to explain. However, one of society's most basic tasks is that of protecting the lives of its citizens and one of the most basic ways in which it achieves the task is through criminal laws against murder. I decline to interfere with the manner in which Georgia has chosen to enforce such

laws on what is simply an assertion of lack of faith in the ability of the system of justice to operate in a fundamentally fair manner." (*Gregg v. Georgia* (1976), 428 U.S. 153, 225-26, 49 L. Ed. 2d 859, 903-04, 96 S. Ct. 2909, 2949.)

As long as affairs of the State's Attorneys' offices are administered by humans there will be variances in the way prosecutorial discretion is exercised. As noted in the language quoted above, "[m]istakes will be made and discriminations will occur which will be difficult to explain." This does not, however, indicate an unconstitutional application of the statute.

The defendant, relying on the affidavits and the Freedom of Information Act responses, alleged that in some counties the State's Attorneys request a death penalty hearing in every death-eligible case, while in other counties a death penalty hearing has never been requested, although there have been convictions in death-eligible murder cases. We presume that by the phrase "death-eligible," the defendant means cases in which one or more of the aggravating factors set out in section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)) were proved. This allegation, of course, does not take into consideration mitigating factors that the prosecutor may have considered and which may have been controlling in determining not to seek a death penalty hearing. Also, neither the allegations of the petition, the affidavits, nor the responses to the Chicago Lawyer's inquiry addressed the strength of the evidence that faced the prosecutor in making the penalty hearing decision. Furthermore, these documents do not consider the assessment of the prosecutor of the likelihood of being successful in securing a death penalty under a given set of facts in a particular county.

The petition and supporting documents attempt to show that in some counties the prosecutors have a policy

of seeking the death penalty in every death-eligible case. This contention is supported by an affidavit relating to Peoria and Will Counties. However, the affidavit concludes that "with few exceptions, every potential death case is tried as an actual death case." Thus, the affidavit itself acknowledges that there have been a "few exceptions" to the alleged policy of seeking death in every death-eligible case. This affidavit also discloses that in Will County, some cases in which the death penalty was sought resulted in manslaughter verdicts and in some cases minimum sentences of 20 years were imposed.

This result in Will County demonstrates that our death penalty statutory procedure has within it the mechanism for the protection of a defendant against an overzealous prosecutor. If the imposition of the death penalty in a particular case offends the conscience of the community, the jury or the court can defeat an unjustified death penalty request at either the conviction or the sentencing stage. Furthermore, this court, on review, in cases where the death penalty has been imposed, has the opportunity to correct any inequities where it is shown that the death penalty should not have been requested by the prosecutor or imposed by the sentencing body.

This court has corrected such inequities in several cases. For instance, in *People v. Carlson* (1980), 79 Ill. 2d 564, although the necessary aggravating factors were proved to make the defendant eligible for the death penalty, this court reviewed the evidence with regard to the aggravating and mitigating factors and concluded that the mitigating circumstances "do not bespeak a man with a malignant heart who must be permanently eliminated from society." (79 Ill. 2d at 590.) In *People v. Greer* (1980), 79 Ill. 2d 103, the aggravating factor which made the defendant eligible for the death penalty was the commission of two murders. However, one of the deaths involved a fetus. This court held that the kill-

ing of an unborn fetus was not murder under our statute and therefore the prosecutor erred in seeking the death penalty. In *People v. Gleckler* (1980), 82 Ill. 2d 145, this court again reversed a death penalty sentence although a statutory aggravating factor had been proved. This court, after reviewing the defendant's prior criminal record and his personality traits, and after considering the sentences imposed upon codefendants, reversed the penalty of death, concluding that it was not appropriate under the circumstances.

We acknowledge that this court has no way of correcting apparent inequities in cases in which the prosecutor has not sought the death penalty or cases in which the death penalty was sought but not imposed. Mr. Justice White addressed this problem in *Gregg v. Georgia.* He stated, *"Absent facts to the contrary,* it cannot be assumed that prosecutors will be motivated in the charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts." (Emphasis added.) (*Gregg,* 428 U.S. at 225, 49 L. Ed. 2d at 903, 96 S. Ct. at 2949.) The defendant has focused on the language "absent facts to the contrary" set out above and insists that the response to the Chicago Lawyer's inquiry and the affidavits establish "facts to the contrary." We do not agree. The information furnished covers only a fraction of the death-eligible cases in the State and only a fraction of the cases in which the death penalty has been imposed. Information concerning the application of the death penalty in Cook County, where well over one-half of all murder convictions in this State are obtained, is almost completely absent. Only a list of 15 murder cases where the death penalty could have been sought but was not is given for that county in one of the affidavits.

We conclude that the petition for post-conviction hearing and the documents filed in support of the peti-

tion did not make a substantial showing that the manner in which the prosecutorial discretion is exercised under our death penalty statute renders the statute as applied unconstitutional. Therefore, the trial court did not err in granting the State's motion to dismiss the petition without an evidentiary hearing. See *People v. Rose* (1969), 43 Ill. 2d 273, 279.

The defendant next asserts that the Illinois death penalty is being applied in a racially discriminatory manner and is therefore unconstitutional. He seeks to support this claim with a statistical study that indicates a disparity in the imposition of the death penalty in Illinois based on the race of the murder victim and, to a lesser extent, the race of the defendant. Gross & Mauro, *Patterns of Death: An Analysis of Racial Disparities in Capital Sentencing and Homicide Victimization*, 37 Stan. L. Rev. 27 (1984).

The identical claim was recently considered and rejected by this court in another post-conviction appeal, *People v. Davis* (1987), 119 Ill. 2d 61. (See also *McClesky v. Kemp* (1987), 481 U.S. 279, 95 L. Ed. 2d 262, 107 S. Ct. 1756.) We adhere to the views expressed in *Davis*, and reject the defendant's contentions on this issue.

The defendant next asserts that the application of *stare decisis* to uphold the constitutionality of the death penalty statute is a violation of due process and the supremacy clause of the United States Constitution. This argument has its roots in *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, in which a four-member majority of this court upheld the constitutionality of the death penalty statute over the dissent of three justices. Subsequently, one member of the *Cousins* majority retired and Justice Simon joined the court.

Thereafter, in *People v. Lewis* (1981), 88 Ill. 2d 129, Justice Simon expressed his agreement with the *Cousins* dissenters that the statute was unconstitutional. How-

ever, the original *Cousins* dissenters, relying on the doctrine of *stare decisis*, voted in *Lewis* to uphold the constitutionality of the death penalty statute.

The defendant now argues that adherence to *stare decisis* in this circumstance is itself a constitutional violation. The supremacy clause of the Federal Constitution, relied on by the defendant in support of this argument, does not come into play until there has been a determination that our death penalty statute does in fact violate the United States Constitution. When such a determination has been made by the Court, whose decisions are binding on this court, then, of course, to continue to adhere to the holding of *Cousins* would violate the supremacy clause. Until then, the only authoritative declaration concerning the constitutionality of our death penalty statute is found in *Cousins* and other decisions of this court which followed *Cousins*. It is therefore appropriate to continue to follow those decisions. This attack on *stare decisis* is based on arguments raised by Justice Simon in his dissenting opinions in *People v. Silagy* (1984), 101 Ill. 2d 147, 184 (Simon, J., dissenting), and *People v. Albanese* (1984), 104 Ill. 2d 504, 549 (Simon, J., concurring in part and dissenting in part). In his brief, the defendant did not even argue the merits of this contention, but simply cited to Justice Simon's dissents. We find no merit to the defendant's contention.

With regard to this issue, it should be noted that in *People v. Albanese* (1984), 104 Ill. 2d 504, one of the members of this court who dissented in *Cousins* pointed out that he must accept the fact that his opinion in *Cousins* was wrong, because four members of this court said that it was wrong, and that he can no longer be counted as one who believes that our death penalty statute is unconstitutional. *People v. Albanese* (1984), 104 Ill. 2d 504, 546 (Ryan, C.J., specially concurring).

The defendant next contends that his execution must be stayed until the Department of Corrections adopts standards and procedures governing the manner and method of execution by lethal injection. He argues that such standards are necessary to ensure that executions via lethal injection are not torturous and therefore cruel and unusual in violation of the eighth amendment. See *In re Kemmler* (1890), 136 U.S. 436, 34 L. Ed. 519, 10 S. Ct. 930.

This argument is premised entirely upon *dicta* from *Chaney v. Heckler* (D.C. Cir. 1983), 718 F.2d 1174, *reversed on other grounds* (1985), 470 U.S. 821, 84 L. Ed. 2d 714, 105 S. Ct. 1649. In that case, the Court of Appeals for the District of Columbia Circuit held that the Food and Drug Administration's (FDA's) refusal to exercise its jurisdiction to regulate the use of certain drugs for lethal injection purposes was arbitrary and capricious. In the course of its discussion, the court stated, "FDA's impermissible refusal to exercise enforcement discretion over the use of drugs for lethal injection \*\*\* may also implicate the eighth amendment's prohibition of cruel and unusual punishment." (718 F.2d at 1191.) This reference, however, was mere *dicta* in the opinion; the holding of the case was limited to the administrative issue of the correctness of the FDA's refusal to act.

The United States Supreme Court reversed and held that the FDA's decision not to take the enforcement actions requested was not reviewable under the Administrative Procedure Act. (*Heckler v. Chaney* (1985), 470 U.S. 821, 84 L. Ed. 2d 714, 105 S. Ct. 1649.) The Supreme Court made no explicit reference to the eighth amendment. However, the Court did characterize the overall result of the Court of Appeals' decision—that the FDA would be required to ensure that States use only drugs that are "safe and effective" for human execu-

tion—as "implausible." 470 U.S. at 827, 84 L. Ed. 2d at 721, 105 S. Ct. at 1653-54.

We reject the petitioner's attempt to seize upon the statement from *Chaney* and present it as a claim of constitutional dimension. As noted, the language relied upon was mere *dicta* in that case. Moreover, the United States Supreme Court reversed the Court of Appeals and, while not directly ruling on the point at issue here, cast doubt upon its legitimacy. The result urged by the petitioner here is the precise state of affairs described as "implausible" by the Court. Finally, the petitioner has failed to identify any authority indicating that any court has found the instant claim to be meritorious. He has also failed to show that an eighth amendment violation has arisen in any of the several executions by lethal injection that have taken place in other jurisdictions.

Furthermore, even if such a claim were potentially cognizable, the petitioner has failed to provide any sworn factual assertions whatsoever to support it. A post-conviction petition must specify the way in which constitutional rights have allegedly been violated and must include affidavits supporting those allegations. (*People v. Hysell* (1971), 48 Ill. 2d 522.) A claim that lethal injections are, or may be, cruel and unusual punishment requires more substantiation than a mere citation to a passing reference by way of *dicta* in a single case since overruled. At the very least, some medical or other scientific support would seem to be called for. For all these reasons, we find that the dismissal of this count of the post-conviction petition was correct.

Lastly, the defendant has requested that he be allowed limited discovery should this case be remanded to the circuit court. However, since we have affirmed the court's conclusion that the defendant has failed to make a sufficient showing to warrant a hearing, no remand is necessary and we need not address this point.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, May 11, 1988, as the date on which the sentence of death entered in the circuit court is to be implemented. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par 119—5). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.

JUSTICE CLARK, specially concurring:

I concur because I agree with the court that mere allegations of the defendant's subjective confusion or lack of understanding will not suffice to afford him an evidentiary hearing on the issue of whether he voluntarily pled guilty. But, as in other instances (see, *e.g.*, *People v. Free* (1988), 122 Ill. 2d 367 (Clark, J., dissenting)), I cannot agree with the court's strict application of the waiver doctrine in death penalty cases.

The arguments I made in *Free* apply *a fortiorari* to the application of the Rule 604(d) (107 Ill. 2d R. 604(d)) waiver rule in death penalty cases. A plea of guilty in a capital case is simply not the same as a guilty plea in any other kind of case. The capital defendant who pleads guilty does not waive merely his right to put the prosecution to its proof. He also takes the first irrevocable step down the slope which may lead to his death. The

people of Illinois need the assurance that he has taken that step with his eyes open.

We cannot, therefore, absolutely condition post-conviction relief in a death penalty case on the presence of a Rule 604(d) motion. If the defendant's plea was truly involuntary, it is at least possible that whatever caused the involuntariness has also prevented the defendant from knowingly waiving his right to file a Rule 604(d) motion. This is particularly true where the involuntariness claim is related to a claim of incompetence of counsel. Under these circumstances, we cannot take the risk of putting a defendant to death merely because his counsel failed to file a piece of paper.

I am aware, of course, that there is another danger: a clever defendant may choose to delay execution by first pleading guilty and then later claiming that his plea was involuntary. To prevent this kind of sandbagging, I would not hesitate to use the presence or absence of a Rule 604(d) motion as one factor in considering whether a defendant was entitled to an evidentiary hearing. But using Rule 604(d) as a factor is one thing; making it an absolute bar is something else. Since I cannot agree with this approach, I specially concur.