2020 IL App (1st) 171137-U

No. 1-17-1137

Order filed June 19, 2020

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 4583 |
| | ) | |
| JAMES HAMPTON, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Mikva and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's second-stage dismissal of defendant's postconviction petition where certain aspects of his claim could have been previously adjudicated and those aspects that could not have been previously adjudicated did not support a substantial showing that his guilty plea was involuntary.

¶ 2    Defendant James Hampton appeals from the second-stage dismissal of his petition for relief

under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), arguing that

he made a substantial showing that his guilty plea was involuntary. For the following reasons, we affirm.

¶ 3     Defendant was charged with 12 counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(4), (8) (West 2000)), and four counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2000)).

¶ 4     On September 3, 2014, the trial court held a hearing at which the State, defense counsel, and defendant were present. At the hearing, the State and defense counsel informed the trial court that the parties reached an "agreed disposition" for defendant to plead guilty to one count of aggravated criminal sexual assault in exchange for a recommended sentence of 11 years' imprisonment and dismissal of the remaining counts. The sentence would be consecutive to a sentence defendant was already serving. Defendant acknowledged that the parties had reached an agreement. The trial court restated the charges, the sentencing range, and the terms of the plea bargain, and defendant stated that he understood the charges and was pleading guilty.

¶ 5     The trial court admonished defendant that by pleading guilty he waived his right to a jury trial in which 12 citizens chosen by the State and the defense would decide whether the State proved defendant guilty beyond a reasonable doubt, and that a guilty verdict must be unanimous. Defendant stated that he read his signed jury waiver, had it explained to him, and that he understood its meaning. The trial court next informed defendant that by pleading guilty he waived his right to a bench trial in which a judge would decide whether the State proved him guilty beyond a reasonable doubt. Defendant stated that he understood and that he knew he was also waiving his rights to confronting and cross-examining witnesses against him and to presenting witnesses on his own behalf.

¶ 6     The trial court then asked defendant whether "any threats, force, or promises of any kind aside from this plea agreement" had been directed against him in order to make him plead guilty. Defendant responded, "Yeah." The following colloquy occurred:

> "THE COURT: Okay. Listen to the question. Ha[s] anybody threatened you or forced you, or made you any promises of any kind aside from this plea agreement to get you to plead guilty?
>
> THE DEFENDANT: Not that I know of.
>
> THE COURT: Okay. So are you pleading guilty freely and voluntarily?
>
> THE DEFENDANT: Yes."

¶ 7     The State provided a factual basis. On September 5, 2000, around 12:30 a.m., S.B., who did not know defendant, was walking alone in an alley near the 6600 block of South Union Avenue. Defendant approached S.B., tried to engage her in conversation, and forced her into a van where he penetrated her vagina with his penis. Later that day, S.B. went to Holy Cross Hospital and submitted to a sexual assault kit that was given to the Chicago Police Department. Orchid Cellmark Laboratories tested the kit and identified the DNA profile of a possible assailant. On February 7, 2007, defendant was arrested and S.B. positively identified him as the offender. Defendant consented to a buccal swab collection, which was given to the Illinois State Police. If called, a forensic DNA expert from the Illinois State Police would testify that defendant could not be excluded as a contributor to the DNA profile identified from the sexual assault kit, and that the chance of a random person having this same profile would be 1 in 93 billion black, 1 in 190 billion white, or 1 in 10 billion Hispanic unrelated individuals. S.B. would testify that she did not consent

to entering defendant's van or to being sexually penetrated by him. Defense counsel stipulated to the factual basis, and the trial court entered defendant's guilty plea.

¶ 8    Defendant confirmed that he waived a presentence investigation report. During sentencing, the following colloquy occurred:

"THEDEFENDANT:***Throughout this course of this investigation throughout this trial process getting up to where I am right now one thing that I have, you know, pride my whole defense was justice, you know, up in this building, and I was like I feel like put in a situation where I know certain things that I'm pleading to are not how they should be, but because the situation that I am put in right now, I have to do what's best for me and my family, so for the record, I'm only pleading for that, nothing else, and I still maintain my innocence. That's it, your Honor.

THE COURT: Well, all right, so you still wish to plead guilty, you're saying that you're doing it?

THE DEFENDANT: Because I'm not stupid. I'm not stupid at all, and I know what it is.

THE COURT: And you also said because that you felt that it was better for you and your family, is that correct?

THE DEFENDANT: That's right. Yes.

THE COURT: All right. So you still wish to plead guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. I'll still accept this plea."

¶ 9      Defendant filed a *pro se* motion to withdraw his guilty plea, which the trial court received on October 6, 2014.[1]Defendant subsequently filed an amended motion, asserting that he gave an "untrue" response when asked if he had been threatened into pleading guilty. He explained that his trial counsel threatened him by refusing to call a witness who could have "cast doubt on the State[']s DNA [e]vidence," which caused him to accept the plea deal despite his innocence.

¶ 10      At a hearing on October 27, 2014, the court asked defendant whether he wanted to proceed on the motion and defendant asked to speak with trial counsel. After speaking with counsel, defendant told the trial court that he wanted to withdraw his motion because "it was just a misunderstanding." The trial court asked defendant if he was withdrawing his motion by his own free will, which defendant said he was. Defendant denied being forced to withdraw the motion, or that anyone promised him anything or threatened him.

¶ 11      On August 25, 2015, defendant filed a *pro se* postconviction petition alleging issues with his jury waiver, the termination of his motions to withdraw his guilty plea, ineffective assistance of trial counsel, and the knowing and voluntary nature of his guilty plea. Defendant attached his affidavit, in which he averred that he pleaded guilty because his attorney "manipulated" him, and if convicted following a trial, he would "have a greater chance of serving the rest of [his] life" in prison. On October 8, 2015, the circuit court advanced defendant's petition to the second stage and appointed postconviction counsel.

¶ 12      On July 26, 2016, postconviction counsel filed a supplemental petition alleging that defendant "felt compelled" to enter the guilty plea in order to end his detention at Northern

---

[1] The proof of service attached to the motion was notarized on September 25, 2014, but does not specify the date the motion was mailed.

Reception and Classification Center (NRC)where he suffered "intolerable" living conditions. The petition noted that NRC is "designed for stays of less than 10 days," but defendant was detained there intermittently over a three-year period from November 28, 2011 to April 10, 2012; May 29, 2012 to November 20, 2013; December 11, 2013 to December 24, 2013; February 26, 2014 to May 7, 2014;and July 16, 2014 to September 17, 2014. Counsel attached an affidavit from defendant stating that NRC (1)deprived him of "special footwear," pain medication, access to a pain specialist, and physical therapy following his 2010 Achilles tendon surgery; (2) inadequately addressed grievances about his medical condition; (3) granted him a shower and yard time once per week; (4) did not allow him to use a walker during yard time; (5) confined him in a cell all day and provided "insufficient" meals; (6) did not provide educational or vocational opportunities; and (7) kept a "count light" on all night that disrupted his sleep.

¶ 13    Postconviction counsel also attached a 2014 John Howard Association report regarding conditions at NRC, which stated the facility has cells that lack "direct natural light," permits inmates "five hours of yard and one shower a week," and "struggled to meet basic needs of its population while over capacity." Per the report, inmates related difficulty obtaining medication, medical treatment, and accommodations for physical disabilities, and received insufficient food and hygiene items. Finally, counsel attached excerpts from a deposition transcript in defendant's federal lawsuit against Wexford Health Services, dated May 29, 2015, in which Dr. Evaristo Aguinaldo described defendant's medical care at NRC. According to Dr. Aguinaldo, he examined defendant for problems with his left leg on December 29, 2012, but did not follow-up with defendant or prescribe physical therapy because defendant's medical chart was not provided.

¶ 14    The State filed a motion to dismiss defendant's petition, which the circuit court granted in a written order on April 13, 2017. Relevant here, the circuit court stated that defendant's allegation that his plea was involuntary because of prison conditions was meritless because he failed to provide a specific instance of abuse which caused him to plead guilty.

¶ 15    On appeal, defendant argues that the circuit court erred by dismissing his postconviction petition because he made a substantial showing that his guilty plea was involuntary due to his desire to escape the conditions at NRC.

¶ 16    The Act provides a three-stage mechanism for defendants alleging their convictions resulted from a substantial deprivation of their constitutional rights. *People v. Cotto*, 2016 IL 119006, ¶ 26. During second-stage proceedings, the circuit court may appoint counsel for an indigent defendant, who may amend the defendant's postconviction petition as necessary. *Id.* ¶ 27. All well-pleaded facts that are not positively rebutted by the record must be accepted as true. *People v. Domagala*, 2013 IL 113688, ¶ 35. The State may file a motion to dismiss the petition, which the circuit court grants where the petition fails to make a substantial showing of a violation of the defendant's constitutional rights. *People v. Dupree*, 2018 IL 122307, ¶ 28. Postconviction proceedings are "limited to constitutional matters that have not been, and could not have been, previously adjudicated." *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). Consequently, "any issues which could have been raised on direct appeal, but were not, are procedurally defaulted and any issues which have previously been decided by a reviewing court are barred by the doctrine of *res judicata*." *Id.* We review the second-stage dismissal of a postconviction petition *de novo*. *People v. Johnson*, 2017 IL 120310, ¶ 14.

¶ 17    Initially, the State contends that under Supreme Court Rule 604(d) (eff. July 1, 2017), defendant waived his postconviction challenge to the voluntariness of his plea because he withdrew the motion to withdraw his plea in the trial court.

¶ 18    Rule 604(d) provides that "[n]o appeal from a judgment entered upon a plea of guilty shall be taken," unless, within 30 days of sentencing, the defendant files "a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." When the motion relies on facts outside the record, it must be supported by the defendant's affidavit or certification. *Id.* The rule further states that "[u]pon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." *Id.* This provision has been described as the Rule 604(d) "waiver rule." *People v. Stewart*, 123 Ill. 2d 368, 374 (1988).

¶ 19    Our supreme considered the Rule 604(d) waiver rule in the context of postconviction proceedings in *Stewart*, where the defendant pleaded guilty and was sentenced to death. *Id.* at 371. The trial court denied the defendant's motion to vacate his conviction and withdraw his plea. *Id.* Following an unsuccessful direct appeal, the defendant filed a postconviction petition alleging that his plea was involuntary because he had not understood the charges or his right to plead not guilty, and his decision reflected "psychological pressure and confusion." *Id.* at 371-72. The supreme court noted the defendant omitted this argument from his postplea motion, and pursuant to Rule 604(d), "issues not preserved in a motion to vacate a guilty plea are waived." *Id.* at 373-74. Because Rule 604(d) "specifically allows for introduction of extra-record facts by affidavit," and "[a]ny allegations relating to the defendant's subjective confusion or lack of understanding could have

been supported by affidavits at the motion-to-vacate stage," the supreme court honored the defendant's waiver of the issue in the postconviction proceeding. *Id.* at 374.

¶ 20    Subsequently, in *People v. Hampton*, 165 Ill. 2d 472 (1995), another defendant who pleaded guilty was sentenced to death, did not move to withdraw his plea, and filed a direct appeal that did not address the voluntariness of his plea. *Hampton*, 165 Ill. 2d at 475-77, 478. Later, the defendant filed a postconviction petition alleging in relevant part that his plea was not knowingly or intelligently made because the trial court did not admonish him that, if he were not sentenced to death, he could be eligible for a mandatory life sentence. *Id.* at 476. The supreme court, however, observed that the defendant's "basis for challenging his plea," namely, the content of the trial court's admonitions, appeared in the transcript of the plea hearing. *Id.* at 478. Moreover, the defendant's claim neither "rel[ied] upon newly discovered evidence or other material outside the record," nor identified "any reason why he could not have raised [the issue] on direct appeal." *Id.* at 478. Accordingly, the supreme court found the defendant waived the issue of postconviction relief for review. *Id.* (citing *Stewart*, 123 Ill. 2d at 372).

¶ 21    Relying on *Stewart* and *Hampton*, the Second District in *People v. Vilces*, 321 Ill. App. 3d 937 (2001), held that pursuant to Rule 604(d), the defendant waived a postconviction claim that his guilty plea was involuntary. The defendant in *Vilces*, unlike in *Stewart*, predicated his involuntary plea allegation on a claim of ineffective assistance of counsel: specifically, that counsel provided erroneous advice about the applicable sentencing range were the defendant to be convicted at trial. *Vilces*, 321 Ill. App. 3d at 939. Notwithstanding, the Second District found that "as in *Stewart*, the facts that defendant needed to state his claim were entirely within his knowledge at the time a motion to withdraw the plea should have been filed," as the record of the plea hearing

established that the trial court properly admonished the defendant regarding the sentencing range and the defendant stated that he understood. *Id.* at 941-42. Thus, the defendant "could have raised this claim in a motion to withdraw the plea and, if necessary, in a direct appeal," and therefore, he "waived consideration of it at the postconviction stage." *Id.* at 942. The Second District noted, however, that waiver would not bar a postconviction claim of involuntariness under other circumstances, including when the claim is based on facts not available to a defendant at the time for filing a motion to withdraw a guilty plea. *Id.*

¶ 22    Several years later, the supreme court applied a similar analysis in *Whitfield*. There, the defendant pleaded guilty, was convicted, and did not file a motion to withdraw his plea or a direct appeal; instead, he filed a motion ultimately recharacterized as a postconviction petition. *Whitfield*, 217 Ill. 2d at 179-81. Therein, the defendant alleged that he was denied due process because he pleaded guilty without knowing that his sentence would include three years' mandatory supervised release (MSR). *Id.* at 180-81. The State contended the defendant waived this claim because he " 'was aware from the date of his guilty plea that the judge had not included an admonition regarding the period of MSR' and never sought to withdraw his guilty plea or directly appeal his conviction." *Id.* at 187. The supreme disagreed, finding it "incongruous" to conclude the defendant defaulted his postconviction claim because he did not object to the trial court's failure to admonish him, particularly where he alleged that he did not learn of the MSR term until prison, and therefore, "could not have raised the error in a motion to withdraw his plea or a direct appeal." *Id.* at 188.

¶ 23    Our review of *Stewart*, *Hampton*, and *Whitfield*, as discussed above, shows that in those cases the supreme court did not reject out-of-hand the defendants' postconviction allegations that their guilty pleas were involuntary when they had not complied with Rule 604(d) in the trial court.

Nor did the court find the Rule 604(d) waiver rule *per se* inapplicable solely because the defendants challenged the voluntariness of their pleas in postconviction proceedings. Instead, in each case, the court considered whether the bases for the defendants' allegations were known to them at the time for filing postplea motions in the trial court. In *Stewart* and *Hampton*, the Rule 604(d) waiver rule applied because the grounds were known to the defendants when they pleaded guilty and could have been raised in motions to withdraw their pleas. See *Stewart*, 123 Ill. 2d at 374 ("[a]ny allegations relating to the defendant's subjective confusion or lack of understanding could have been supported by affidavits at the motion-to-vacate stage"); *Hampton*, 165 Ill. 2d at 478 (the defendant's claim did not rely on "material outside the record"). In *Whitfield*, in contrast, the grounds were not known to the defendant, could not have been raised in a motion to withdraw his plea, and therefore, were not waived. See *Whitfield*, 217 Ill. 2d at 188.

¶ 24    With this framework in mind, we turn to the present case. The record shows that defendant pleaded guilty on September 3, 2014, and answered affirmatively when the court asked whether his plea was free and voluntary. During sentencing, however, defendant stated that due to the "situation that I am put in right now, I have to do what's best for me and my family." Defendant then filed a motion to withdraw his plea, which he withdrew. Later, defendant filed a postconviction petition and supplemental petition alleging, *inter alia*, that he "felt compelled" to plead guilty in order to escape "intolerable" living conditions at NRC. According to the supplemental petition, defendant was intermittently detained at NRC while his case was pending in the trial court, including on the date he pleaded guilty. The supplemental petition included defendant's affidavit alleging various hardships, a report describing conditions at NRC, and the deposition transcript of a doctor who examined defendant at that facility.

¶ 25    Following *Stewart*, *Hampton*, and *Whitfield*, we find that defendant waived his postconviction challenge to the voluntariness of his guilty plea to the extent he could have raised the above bases in a motion to withdraw the plea in the trial court. Defendant knew of the conditions at NRC outlined in his affidavit when he pleaded guilty, as he was incarcerated there when he entered his plea and had been for some time. Further, because Rule 604(d) permits defendants to introduce by affidavit facts outside the record, defendant could have supported a motion to withdraw his plea with those same allegations. See *Stewart*, 123 Ill. 2d at 374; *Hampton*, 165 Ill. 2d at 478.

¶ 26    However, to the extent that defendant predicates his claim on material attached to his postconviction petition that was not available when he pleaded guilty, we find it proper to address his allegations on the merits. As the supreme court has explained, it would be incongruous to find that defendant defaulted that part of his postconviction challenge to the voluntariness of his guilty plea that is based on previously unavailable evidence, which he could not have presented in a motion to withdraw his plea or on direct appeal. *Whitfield*, 217 Ill. 2d at 188. Specifically, defendant has not waived his claims to the extent they are predicated on the 2014 John Howard Association report and the deposition transcript from defendant's federal lawsuit.

¶ 27    In so holding, we recognize that a panel of this district applied a different analysis in *People v. Miranda*, 329 Ill. App. 3d 837 (2002), where, in considering whether the defendant waived her postconviction challenge to the voluntariness of her guilty plea, the court did not distinguish between grounds that were known to her at the time for filing a Rule 604(d) motion and grounds that were not known.

¶ 28    In *Miranda*, the defendant was found guilty and sentenced *in absentia* for possession of a controlled substance with intent to deliver. *Miranda*, 329 Ill. App. 3d at 839. Later, she was arrested, charged with violation of bail bond, pleaded guilty to that offense, and was sentenced thereon. *Id.* She did not move to withdraw her guilty plea, and only filed a direct appeal from her drug conviction. *Id.* at 839-40, 841. She then filed a postconviction petition alleging there was no factual basis for her guilty plea for violating bail bond and that trial counsel was ineffective for advising her to plead guilty where no factual basis existed. *Id.* at 840. The circuit court denied the petition, and the defendant appealed. *Id.* at 840-41.

¶ 29    On review, we stated that "Rule 604(d) does not apply in post-conviction proceedings," and therefore, the defendant "has not waived her claims solely because she failed to file a motion to withdraw her guilty plea." *Id.* at 841. Moreover, although the defendant did not file a direct appeal from her bail violation conviction, she could still assert a violation of her constitutional rights as contemplated by the Act. *Id.* at 841-42. In reaching this conclusion, we stated that "the doctrines of waiver and *res judicata* apply to appeals from the denial of post-conviction petitions only in cases 'where a petitioner has previously taken a direct appeal from a judgment of conviction.' " *Id.* at 842 (quoting *People v. Flores*, 153 Ill. 2d 264, 274 (1992)). Further, while the defendant "could have waived—by failure to appeal—issues of mere trial error, she is 'still entitled to assert those constitutional rights which the *** Act is designed to protect and preserve.' " *Id.* (quoting *People v. Rose*, 43 Ill. 2d 273, 279 (1969)).[2]

---

[2] As a further basis for our holding in *Miranda*, we found that "fundamental fairness" required excusing any waiver that may have occurred because the record established the defendant was improperly convicted. *Miranda*, 329 Ill. App. 3d at 843.

¶ 30    In stating that a defendant who did not file a direct appeal did not waive *any* claims regarding rights amenable to vindication under the Act, *Miranda*—unlike *Whitfield*, *Hampton*, and *Stewart*—did not consider whether the underlying facts were known to the defendant when she could have raised them in a motion to withdraw her guilty plea. Indeed, *Miranda* predated *Whitfield* and addressed neither *Stewart* nor *Hampton*. The cases on which *Miranda* relied also did not recognize this distinction. See *id.* at 841 (citing *People v. Stein*, 255 Ill. App. 3d 847, 848 (1993), *People v. Brumas*, 142 Ill. App. 3d 178, 180 (1986), and *People v. Parker*, 57 Ill. App. 3d 697, 700-01 (1978)).

¶ 31    In the present case, we find it more appropriate to apply the approach utilized in *Whitfield*, *Hampton*, and *Stewart*. That is, generally "it is not necessary for a defendant to have moved to withdraw his guilty plea if he wishes to raise voluntariness issues in a postconviction proceeding," but only "in cases where the facts forming the basis for the claim were not available at the time defendant should have moved to withdraw the plea." *Vilces*, 321 Ill. App. 3d at 943. "[T]he opposite rule" applies, however, "with respect to those cases in which defendant could have raised the claim in a motion to withdraw the plea." *Id.* at 943 (citing *Hampton*, 165 Ill. 2d at 478 and *Stewart*, 123 Ill. 2d at 373-74).

¶ 32    Here, as we have explained, certain bases for defendant's assertion that his guilty plea was involuntary were known to him when he could have filed a motion to withdraw his plea and others were not. The former grounds, but not the latter, are waived. Therefore, we turn to the merits of those grounds that are properly before us on appeal.

¶ 33    In particular, defendant's supplemental postconviction petition included a 2014 John Howard Association report that described conditions at NRC, including cells that lack natural light,

limited yard and shower time, and overcrowding. According to the report, inmates received insufficient food and reported difficulty obtaining medication, medical treatment, and accommodations for physical disabilities. The petition also included excerpts from the May 29, 2015 deposition of Dr. Aguinaldo, who examined defendant at NRC on December 29, 2012. According to Dr. Aguinaldo, he did not prescribe physical therapy because defendant's medical chart was not provided.

¶ 34    Based on these materials, we find that defendant has failed to make a substantial showing of a violation of a constitutional right. "When a defendant claims that he only pleaded guilty due to prison conditions, it does not necessarily follow that his plea was involuntary." *People v. Urr*, 321 Ill.App.3d 544, 547 (2001) (citing *People v. St. Pierre*, 146 Ill.2d 494, 507 (1992)). Rather, a "[d]efendant must allege a specific instance of abuse, which caused him to plead guilty, and he must sufficiently establish a nexus between the alleged violence and his guilty plea." *Id.*

¶ 35    In *St. Pierre*, the trial court entered the defendant's guilty plea after defense counsel said that defendant was pleading guilty due to the gangs, homosexuality, drugs, and weapons prevalent in the jail in which he was housed. *St. Pierre*, 146 Ill.2d at 502. The defendant filed a direct appeal, arguing in relevant part that his plea was involuntary based on the dangerous conditions at the jail. *Id.* at 499. The supreme court disagreed, noting that the defendant stated in the trial court that "the main reason" he pleaded guilty was that he committed the crime, and his "personal discomfort" at the time of his plea did not invalidate it without him alleging any specific physical, mental, or coercive abuse which caused him to plead guilty. *Id.* at 508.

¶ 36    In contrast, specific instances of abuse were found in *Urr*, where the defendant claimed prison violence as the basis for his involuntary plea throughout the proceedings, including plea

admonishment. *Urr*, 321 Ill.App.3d at 548. On direct appeal from the trial court's denial of the defendant's motion to withdraw his guilty plea, we reasoned that because the defendant "alleged specific acts of violence in claiming he was sexually assaulted, urine was thrown at him, and his life was threatened," and "he specifically told the court that these incidences were the reason he was pleading guilty," he "established the nexus required" between the poor conditions and his plea. *Id.*

¶ 37    In this case, the report and doctor's affidavit attached to defendant's supplemental postconviction petition neither identified specific instances of abuse that caused defendant to plead guilty nor established the requisite nexus between such instances and his plea. The report echoes certain allegations about the conditions at NRC that defendant made in his own affidavit, but as we have explained, those conditions were known to defendant when he had the opportunity to file a motion to withdraw his guilty plea, and at that juncture, he did not bring to the trial court's attention that any of those circumstances were the reason he pleaded guilty. Dr. Aguinaldo averred that he examined defendant's left leg and did not prescribe physical therapy because he did not have defendant's medical chart. These circumstances do not establish a nexus with the guilty plea that defendant entered nearly two years after Dr. Aguinaldo examined him, and therefore, do not support a substantial showing that defendant pleaded guilty involuntarily.

¶ 38    Because the materials from defendant's supplemental postconviction petition that are properly before us do not support a substantial showing of a constitutional violation, we find the circuit court properly dismissed the petition. Therefore, for the foregoing reasons, we affirm the judgment of the circuit court.

¶ 39    Affirmed.