(No. 69238.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT ST. PIERRE, Appellant.

*Opinion filed February 20, 1992.—Rehearing denied March 30, 1992.*

Charles M. Schiedel, Deputy Defender, and Allen H. Andrews, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CLARK delivered the opinion of the court:

This is the second time defendant's, Robert St. Pierre's, murder convictions have been before this court. Following a jury trial in the circuit court of Cook County, defendant was found guilty of the murders of Sybil and Benjamin Gibons. In addition, defendant was convicted of two counts of conspiracy to commit murder, two counts of armed robbery, and two counts of concealing a homicidal death. A jury sentenced defendant to death for the murders, and the trial court sentenced defendant to two consecutive 60-year extended prison terms on the armed robbery convictions; two concurrent 7-year terms on the conspiracy convictions; and two concurrent 5-year terms on the convictions for concealment of a homicidal death. Defendant's sentence of death was stayed (134 Ill. 2d R. 609(a)) pending direct appeal to this court. Ill. Const. 1970, art. VI, §4(b); Ill. Rev. Stat. 1987, ch. 38, par. 9—1(i); 134 Ill. 2d R. 603.

On appeal, this court reversed defendant's convictions and remanded the cause to the circuit court for a new trial. (*People v. St. Pierre* (1988), 122 Ill. 2d 95.) The reversal was based on the admission at trial of defendant's inculpatory statements in violation of his fifth and fourteenth amendment rights. See *St. Pierre*, 122 Ill. 2d at 113.

On remand, on August 8, 1988, defendant executed a written jury waiver form, and pled guilty to the murders of Sybil and Benjamin Gibons, as well as to two counts each of armed robbery, conspiracy to commit murder,

and concealment of a homicidal death. Defendant waived his right to a jury for the sentencing phase of the proceedings. During the first phase of the sentencing hearing, the trial court found defendant eligible for the death penalty because he was at least 18 years of age at the time of the murders, and because two statutory aggravating factors were present (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(b)(3), (b)(6)). At the second stage of the sentencing hearing, the trial court found no mitigating factors sufficient to preclude the imposition of the death penalty. Consequently, the trial court sentenced defendant to death. Also, the trial court sentenced defendant to concurrent terms of 60 years for the two counts of armed robbery, 7 years for the two counts of conspiracy to commit murder, and 5 years for the two counts of concealment of a homicidal death. Defendant's death sentence was stayed (134 Ill. 2d R. 609(a)) pending direct appeal to this court (Ill. Const. 1970, art. VI, §4(b); 134 Ill. 2d R. 603).

Defendant argues on appeal that: (1) his decision to plead guilty was not voluntary because it was motivated by the dangerous conditions in which he was confined at the Cook County jail; (2) his decision to waive a jury for sentencing was not voluntary because it was motivated by the dangerous conditions in which he was confined at the Cook County jail; (3) his decision to waive a jury for sentencing was not knowing, intelligent or voluntary because he was not told that the vote of only one juror would preclude the imposition of the death sentence; (4) his decision to waive a jury for sentencing was not knowing, intelligent or voluntary because he was not told that a jury would be unaware that he had been previously sentenced to death for these murders; (5) his death sentence was disproportionate to the sentences of natural life imprisonment received by Barry Wilson and Jacqueline Gibons, who orchestrated these murders; (6)

the trial court erred when it refused to consider his good behavior in prison as a mitigating factor, and in finding that he did not appreciate the seriousness of his crimes; (7) he was denied due process and his eighth amendment right to a fair sentencing hearing because the prosecutor argued that defendant should be sentenced to death because he might escape from prison; (8) the equal protection clause of the United States Constitution and article I, section 2, of the Illinois State Constitution were violated where defendant was permitted to waive the preparation of a presentence investigation report; (9) his convictions for the inchoate offense of conspiracy to commit murder must be reversed; (10) the Illinois death penalty statute is unconstitutional because it places the burden of proof on the defendant; and (11) the Illinois death penalty statute is unconstitutional because it does not sufficiently minimize the risk of arbitrarily or capriciously imposed death sentences.

The facts regarding defendant's arrest and conviction for the murders of Sybil and Benjamin Gibons are not in dispute and are adequately set forth in this court's earlier opinion on direct appeal. (See *St. Pierre*, 122 Ill. 2d 95.) Consequently, certain facts will be repeated here only when necessary as each issue is dealt with serially. The first issue that defendant raises is that his decision to plead guilty was not voluntary because it was motivated by dangerous conditions at the Cook County jail.

Due to the unusual and peculiar nature of this case, we will relate in some detail the discussions between the trial judge, defense counsel and defendant regarding defendant's entering of a guilty plea. As noted above, on March 30, 1988, this court overturned defendant's convictions and remanded this cause to the circuit court of Cook County for a new trial. (*St. Pierre*, 122 Ill. 2d 95.) Subsequent to this court's decision, defendant was apparently transferred from the Illinois Department of

Corrections' Menard facility to the Cook County jail. Thereafter, on July 26, 1988, defendant informed the trial court that he wished to enter a blind plea of guilty (there was no plea agreement with the State) for the murders of Sybil and Benjamin Gibons. According to defendant's court-appointed counsel, defendant was entering this blind plea of guilty because he could not "adjust" to the conditions at the Cook County jail.

Immediately after defendant's surprising announcement that he wished to plead guilty, the trial judge stated that he wanted defendant examined by a psychiatrist so as to determine defendant's fitness to enter a plea of guilty. On August 8, 1988, Dr. Albert Stipes, a psychiatrist at the Cook County Psychiatric Institute, testified that he examined defendant on August 4, 1988, and that he found defendant "fit for trial, for pleading, or for sentencing." In addition, Dr. Stipes stated that "[defendant's] knowledge of the charges against him, as well as the proceedings and the duties of court personnel, are quite sophisticated." After Dr. Stipes testified, the trial judge stated:

> "I think at this point it should be made clear in the record that there was no general indication of any specific abnormality on the part of [defendant] that required me to ask for a [fitness] examination. It was merely the unusual circumstances that someone who has gone through an appeal process whose case is overturned and then gets the case sent back here for trial and has the opportunity to be represented by able counsel and has a right to defend himself, then decides in spite of it all to plead guilty to the same charges for which he has now been granted a new trial ***.
>
> * * *
>
> *The only thing that bothers me and the only thing that should be clear in the record is that if the decision to plead guilty is not based on one of guilt but is based on one of inconvenience, then I don't know if I can accept it*

and there will be, and I intend, during the next phase of this hearing which we are going to go into right now, to ask a number of questions along that line \*\*\*." (Emphasis added.)

Following these comments, there were further discussions between the trial judge, defense counsel and defendant regarding the entering of a guilty plea and defendant's disdain with being incarcerated in the Cook County jail. Specifically, defense counsel stated that defendant was pleading guilty due to the gangs, homosexuality, drugs and weapons which were prevalent at the Cook County jail. However, counsel also stated that if defendant could be transferred into an Illinois Department of Corrections facility, he would be willing to assist defense counsel in the preparation of a defense. In response, the trial judge explained that he understood that there are many people in the Cook County jail, but that an accused's indication that he is "uncomfortable" in a certain jail is not a factor to be used to determine where a specific defendant is incarcerated. Rather, the trial judge explained that he was required to send an individual to the penitentiary after a conviction or, in the interim, to remand the accused individual to the custody of the Cook County sheriff, who has control over the incarceration.

Moreover, the trial judge reiterated:

"[I] cannot in good conscience accept a plea of guilty from someone who would tell me that he is only pleading guilty because he's uncomfortable with the conditions, and let me finish, who would not admit that in fact he's guilty of the crimes charged.

*If it turns out that the defendant in this case is guilty of the crimes charged and for reasons of personal, I don't know if uncomfort is the right word, but for lack of a better one, for personal comfort wants to plead guilty so that he doesn't have to remain at the Cook County jail, I don't find any problem with that.*

Everyone has the right to have their case tried or not have it tried. They have a right to plead guilty, but if the reason for the plea of guilty is not guilt of the crime, then I won't accept the plea.

If the reason for the plea of guilty is guilt of the crime and I want to do it now rather than spend any more time in the County jail, so be it." (Emphasis added.)

Defense counsel then informed the court that, over his objections, defendant wished to plead guilty. The trial judge methodically went through the indictment with defendant to insure that defendant knew what specific charges were pending against him, and that he understood the nature of the charges. The State's Attorney subsequently read into evidence the stipulated testimony which formed the factual basis of the plea. At the conclusion of the stipulated testimony, defendant stated that he understood what stipulated testimony was, and that much of the stipulated testimony was familiar to him from his first trial. In addition, defendant stated that he understood that by pleading guilty he was waiving his right to file pretrial motions which would limit or exclude certain stipulated testimony. Defendant also stated that he understood that if a trial were held the State would not be able to use his inculpatory statements which this court excluded in his first appeal. Finally, the trial court determined that, based on the stipulated testimony, there was a factual basis for defendant's guilty plea.

The trial judge then admonished defendant as to the possible range of sentences that he might receive for each of the charges. Specifically, the trial judge informed defendant that because he was charged with two murders, the statute only allows for two possible sentences: death or natural life imprisonment. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) Defendant stated

that he understood the potential sentences he might receive for each of the charges against him.

The trial judge also informed defendant that he was presumed innocent of the charges in this matter, and that he had a right to a trial, in which either a jury of 12 men and women from the community or a judge would decide whether the State had proved him guilty beyond a reasonable doubt. In addition, defendant was admonished that by pleading guilty he was in fact admitting that he was guilty, and that he was waiving his right to a trial and his right to confront and cross-examine the witnesses against him. Defendant stated that he understood each of these consequences of his pleading guilty.

Following the above exchange, the trial judge inquired as to whether defendant's plea was voluntary:

"Q. [Trial Judge]: The last thing I have to check with you, [defendant], is whether or not this plea is voluntary, and as I indicated to you before when we had the colloquy about the conditions in the jail, I cannot accept your plea unless I know it is voluntary.

If you are only pleading guilty because you're being forced to do it in some way, then of course it is not appropriate for me to accept your plea of guilty. Do you understand that?

A. [Defendant]: Yes, I do, your Honor.

Q. *So my question to you, [defendant], is are you pleading freely and voluntarily, without force or threat of someone coercing you into pleading guilty?*

A. *I'm pleading voluntarily.*" (Emphasis added.)

In response to the trial judge's explanation of the necessity that the court find a factual basis before accepting defendant's plea of guilty, defendant stated: *"Your Honor, if I might, okay, to enter a plea of not guilty, okay, when in fact I did commit the crime would be tantamount to trying to get away with murder, and that's not my intention."* (Emphasis added.) Subsequently, the trial judge accepted defendant's plea of guilty.

The following day, defense counsel filed a motion to withdraw defendant's plea of guilty and order "appropriate pre-trial incarceration." Defendant informed the trial court that he did not want this motion filed. The trial judge then questioned defendant regarding defense counsel's motion to withdraw the plea. Defendant stated that he was guilty of the charges against him, that no one was forcing or coercing him to plead guilty, and that his plea was voluntary. Subsequently, the following colloquy took place:

"Q. [Trial Judge]: In any event, I advised you yesterday, and I am going to do it again, if you are pleading guilty to this charge merely to get out of the jail and you did not in fact commit the acts with which you are charged and which yesterday you plead guilty, and that you are in some way indicating that you are at such a high state of discomfort that you can't stand to get ready for trial and prepare your case and assist your lawyer, and you just have to get out of jail, regardless of whether you are guilty or not guilty of the charges, I cannot and will not accept your plea of guilty. Do you understand that?

A. [Defendant]: Yes, your Honor.

Q. If you are saying to me that you are guilty of these charges, as you did yesterday, that you committed the acts with which you are charged in the indictment, as you did yesterday, and that the statement of facts which was ready [sic] by the State's Attorney is basically the statement of facts as you understand that to be, or is basically the facts as you understand them to be, then if your motivation is to plead now rather than later, or not to take a trial, for whatever reason, I can take the plea. But as long as it is done voluntarily, and as long as I am convinced that your motivation in doing this is one that you are in fact guilty of the crime and, two, you feel that it is in your best interests to do it now rather than at some other time. Is that clear, [defendant]?

A. Yes, it is, your Honor.

Q. Okay. What is your answer to that question?

A. *I am not pleading guilty merely to leave the facility. That, however, is one of the reasons. But the main reason is that I am in fact guilty of the crime.*" (Emphasis added.)

In *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, the United States Supreme Court addressed the issue of a defendant's need to understand the consequences of his entering a guilty plea. In *Boykin*, the Court held that it is a violation of due process for the court to accept a guilty plea without an affirmative showing that the defendant voluntarily and intelligently entered his plea of guilty. *Boykin*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709; see also *People v. Williams* (1983), 97 Ill. 2d 252, 267-68.

In response to *Boykin*, this court adopted Rule 402, which provides, in part:

"In hearings on pleas of guilty, there must be substantial compliance with the following:

(a) Admonitions to Defendant. The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences;

(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and

(4) that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him." 134 Ill. 2d R. 402.

Paragraph (b) of Rule 402 states, in part:

"Determining Whether the Plea is Voluntary. The court shall not accept a plea of guilty without first determining that the plea is voluntary. *** The court, by ques-

tioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and *shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea.*" (Emphasis added.) 134 Ill. 2d R. 402(b).

After reviewing the record, we find that defendant knowingly, intelligently, and voluntarily entered his guilty plea. Initially, we note that defendant does not contend that the trial court failed to abide by the requirements of our Rule 402 in admonishing defendant. He does not claim that the trial court failed to explain the nature of the charges against him (see 134 Ill. 2d R. 402(a)(1)), or that he was unaware of the possible punishments to which his conduct had exposed him (see 134 Ill. 2d R. 402(a)(2)). Nor does he claim that he did not know he had a right to a trial, either by jury or judge, or the right to confront the witnesses against him (see 134 Ill. 2d R. 402(a)(4)). He does not argue that he was unaware of his right to plead not guilty (see 134 Ill. 2d 402(a)(3)). He does not argue that his guilty plea was the result of any force, threats or promises on the part of the trial judge, the State's Attorney, defense counsel or the guards at the Cook County jail (see 134 Ill. 2d 402(b)). Rather, defendant argues that his guilty plea was the result of the "chaotic environment at the Cook County jail."

It is evident from the record cited above that the trial judge repeatedly and thoroughly advised defendant of his rights and the attendant consequences of entering a guilty plea. Defendant's claim that his guilty plea was motivated by the "intolerable conditions in the Cook County jail" does not demonstrate that his plea was involuntary, as he now claims. In fact, defendant's dislike with being incarcerated at the Cook County jail is not surprising given his assertion that it is noisy, over-

crowded, drug-infested, and dominated by gangs. However, we believe that defendant's personal discomfort does not invalidate his guilty plea provided the plea was otherwise intelligent and voluntary. In this case, the trial judge repeatedly told defendant that if the only reason defendant was pleading guilty was to leave the Cook County jail, he could not and would not accept his guilty plea. Defendant denied that leaving the Cook County jail was the primary motive for his guilty plea, stating that *"the main reason is that I am guilty of the crime."* (Emphasis added.) By failing to allege any specific instance of abuse, either physical or mental, or coercion which would have caused him to plead guilty, we find that defendant has failed to demonstrate a necessary nexus between the alleged coercive conditions at the jail and his guilty plea. Consequently, because the trial judge substantially complied with the requirements of our Rule 402, we find that defendant's guilty plea was intelligent and voluntary.

Similar to the argument he raised above, defendant argues that his decision to waive a jury for sentencing was not voluntary because it was motivated by the dangerous conditions in which he was confined at the Cook County jail. Although " '[t]he right to a sentencing jury in a capital case is a statutory, not a constitutional right' " (*People v. Nitz* (1991), 143 Ill. 2d 82, 129, quoting *People v. Erickson* (1987), 117 Ill. 2d 271, 289), a defendant's waiver of this right must be knowing and intelligent (*People v. Albanese* (1984), 104 Ill. 2d 504, 535). Whether a defendant's waiver is, in fact, knowing and intelligent will turn on the facts and circumstances of each case. (*Albanese*, 104 Ill. 2d at 535-36.) We find that defendant knowingly and intelligently waived his right to a jury for sentencing.

The record discloses that prior to defendant's signing of a jury waiver form which had been modified to apply

to a sentencing proceeding under the death penalty stat-
ute, the trial judge advised defendant to discuss with de-
fense counsel whether defendant would like a judge or
jury for the sentencing hearing. After a short recess, the
following colloquy occurred:

"Q. [Court]: [Defendant], have you had occasion to
confer with [defense counsel]?

A. [Defendant]: Yes, your Honor I have.

Q. And in regard to the question of who you would
like to have make the decision about whether your eligi-
ble for the death penalty and whether it is the appropri-
ate sentence, what have you decided?

A. *I have decided the judge would decide that.*

Q. I'm the judge, I would be the one making the de-
cision, is that what you would rather have?

A. Yes.

Q. Just so it's clear, because we took a break for you
to confer, I want to go through just one more time what
the decision is.

Now that I have entered judgment on the finding,
you're convicted of the charges in the indictment as we
went through before.

The possible sentences on the murder charges, be-
cause of the nature of the other crimes along with them
and the fact there are two people who are dead, that the
only possible sentences are life imprisonment without pa-
role or death, do you understand that?

A. I understand that.

Q. The statute requires in order for there to be a de-
cision about the death penalty, before anyone can do that,
whether it's a judge or jury, there has to be two things
decided. One, are you eligible, and two, if you are eligi-
ble, is it an appropriate sentence, and in connection with
that, there has to be a hearing in aggravation and mitiga-
tion. Do you understand that?

A. How about eligibility, when will that be deter-
mined?

Q. Depending on how we do it, it will be determined
just prior to the second phase, the first phase is are you

eligible, the second phase is aggravation and mitigation, okay?

A. So it will be continued for tomorrow?

Q. Well, it was my understanding when we started this today that I did not want to proceed right into the sentencing phase, I wanted at least to take a break myself and have you take a break until tomorrow morning, but I intend to go ahead tomorrow morning.

What I have to know is whether I am bringing a jury up to pick to make this decision, but I'm admonishing you again so it's clear on the record you understand all your options, that's all.

So in any event, based on all that, knowing that you have a right to have the jury make that determination and it would be same kind of jury, 12 people from the community we'd pick at random to sit in the jury box and listen to the evidence and make that determination.

Q. [State's Attorney]: Your Honor, one thing as to that, defendant should be advised their verdict would have to be unanimous.

Q. [The Court]: And I forgot to say that, that's right, and that both as to eligibility and as to death or no death, you'd be entitled to have 12 people make that decision, and it would have to be unanimous of all the 12 people. Do you understand that?

A. [Defendant]: Yes, I understand that, your Honor.

Q. Knowing all of that, whom do you wish to make that determination, the jury or me?

A. You, your Honor.

Q. And do you understand by signing that you are putting in writing that you are giving up your right to a jury trial, to decide eligibility or imposition of the death penalty?

A. Yes, I do, your Honor.

Q. I accept that from the defendant." (Emphasis added.)

Following this colloquy, defendant signed a jury waiver form.

Based on the above exchange, we believe that defendant knowingly and intelligently waived his right to a jury

for sentencing. Defendant acknowledged that he had spoken with his attorney regarding this important decision, admitted that he understood the ramifications of his decision, and freely signed the waiver form. In addition, the day after the above jury waiver, the trial judge again questioned defendant whether he desired to waive a jury for sentencing. Defendant replied that he had not changed his mind. Defendant's assertion that he waived a jury for sentencing due to the dangerous conditions at the Cook County jail is baseless. Once again, defendant has failed to allege any specific instance of abuse, either physical or mental, or coercion which would have caused him to waive a jury for sentencing. Thus, we find that defendant has failed to demonstrate a necessary nexus between the alleged coercive conditions at the jail and his waiver of jury for sentencing.

Next, defendant argues that his decision to waive a jury for sentencing was not knowing, intelligent or voluntary because defendant was not told that the vote of only one juror would preclude the imposition of a death sentence. We disagree. First, we note that this court "ha[s] never imposed a requirement that a valid admonition must include an explanation that a single juror's belief is sufficient to preclude imposition of the death penalty." (See *People v. Erickson* (1987), 117 Ill. 2d 271, 295.) Second, and more importantly, the trial judge clearly apprised defendant of the consequences of waiving the jury for sentencing. Specifically, as quoted above, the trial judge stated:

> "And I forgot to say that, that's right, and that both as to eligibility and as to death or no death, you'd be entitled to have 12 people make that decision, and *it would have to be unanimous of all the 12 people. Do you understand that?*" (Emphasis added.)

Based on this statement, we find defendant's argument to be meritless.

Next, defendant argues that his decision to waive a jury for sentencing was not knowing, intelligent or voluntary because he was not told that a jury would be unaware that he had previously been sentenced to death for these murders. The State maintains that this argument has no merit because there is no requirement that a defendant be so admonished, and the record reveals that defendant's jury waiver was knowing, intelligent and voluntary.

We agree with the State. Clearly, it is reversible error for a jury to be informed that a defendant has previously been sentenced to death. (See *People v. Hope* (1986), 116 Ill..2d 265, 273-74; *People v. Davis* (1983), 97 Ill. 2d 1, 25-26.) However, this prohibition against the jury's being told about a defendant's prior death sentence does not mean that a defendant must be so admonished. As stated in *People v. Buggs* (1986), 112 Ill. 2d 284, 292, "[this court] continue[s] to believe that the sixth amendment does not require a precise formula for determining whether a waiver has been knowingly and intelligently made. Each case will be decided on its own facts." In this case, we have already determined that defendant knowingly and intelligently waived his right to a jury for sentencing. The fact that he was not admonished that a sentencing jury would be unaware of his prior death sentence does not invalidate his otherwise valid waiver.

Next, defendant argues that his death sentence is excessive and disproportionate in comparison to the sentences of natural life imprisonment received by Barry Wilson and Jacqueline Gibons (see *People v. Gibons* (1986), 149 Ill. App. 3d 37 (the appellate court reversed Wilson's and Gibons' convictions and remanded for new and separate trials)), who planned the murders of Benjamin and Sybil Gibons. Specifically, defendant claims that "while [defendant] inflicted the fatal wounds, the circumstances surrounding the killing show that [defendant]

was not more culpable, and therefore more deserving of death, than either Jacqueline Gibons or Barry Wilson." We disagree.

"In determining whether the imposition of the death penalty is proper in a particular case, we are required not only by the decisions of the United States Supreme Court but also by the Illinois Constitution to consider the circumstances of the offense and the character of the defendant." (*People v. Szabo* (1983), 94 Ill. 2d 327, 352, citing Ill. Const. 1970, art. I, §11; *People v. Gleckler* (1980), 82 Ill. 2d 145, 162.) A sentence does not offend the requirement of proportionality if it is commensurate with the seriousness of the crime and gives adequate consideration to the rehabilitative potential of the defendant. (*People v. Gaines* (1981), 88 Ill. 2d 342, 380-82; *People v. Carlson* (1980), 79 Ill. 2d 564, 587.) "In addition, however, this court has a duty to ensure that the cases in which death is imposed are rationally distinguished from those in which it is not imposed." (*Szabo*, 94 Ill. 2d at 352.) Rationality, consistency, and evenhandedness in the imposition of the death penalty are constitutionally indispensable. *People v. Brownell* (1980), 79 Ill. 2d 508, 543; *Jurek v. Texas* (1976), 428 U.S. 262, 276, 49 L. Ed. 2d 929, 941, 96 S. Ct. 2950, 2958.

As we have already noted, most of the facts pertinent to this argument are set out in this court's earlier opinion in this case. (See *People v. St. Pierre* (1988), 122 Ill. 2d 95.) Suffice it to say that, although Barry Wilson and Jacqueline Gibons conceived the plan to kill Sybil and Benjamin Gibons, it was defendant alone who struck the blows which resulted in their deaths. In our analysis here, we find particularly apropos this court's statement in *People v. Ashford* (1988), 121 Ill. 2d 55, 88:

> "The record before us thoroughly refutes any notion that the defendant and Jones were equally culpable in the murders of the four victims. Although the defendant and

Jones planned the crimes together and evenly split the proceeds of their criminal venture, the evidence *** showed that the two had anything but equal roles in the actual killings. The defendant's self-incriminating account of the murders *** *established that it was the defendant, not Jones, who shot all four of the victims.*" (Emphasis added.)

Because it was defendant who repeatedly struck Benjamin Gibons in the head with a hammer, and then waited 30 minutes for Sybil Gibons to return home from work and also struck her repeatedly in the head with a hammer, we find that defendant's culpability was measurably greater than that of Barry Wilson and Jacqueline Gibons. Therefore, we conclude that defendant's sentence of death was not excessive or disproportionate in comparison to the sentences of natural life received by Barry Wilson and Jacqueline Gibons.

Next, defendant argues that the trial judge erred when he refused to consider defendant's good behavior on death row as mitigating evidence, and in concluding that defendant did not appreciate the seriousness of his crimes. At the sentencing hearing, defendant testified that after being sentenced to death at his first trial in October 1983, he began to study grammar, poetry, and Egyptology. In addition, defendant stated that he had purchased a typewriter and that he intended to write about Egypt. Defendant's testimony was corroborated by Monte C. Williams, a psychologist with the Illinois Department of Corrections. Defendant maintains that the trial judge refused to consider this testimony as mitigating evidence because defendant "had not pursued any of those activities before his incarceration." We disagree.

It is clear that a sentencer may not refuse to consider or be prevented from considering evidence that a defendant has adjusted well to incarceration. (*Skipper v. South Carolina* (1989), 476 U.S. 1, 90 L. Ed. 2d 1, 106

S. Ct. 1669; see also *Eddings v. Oklahoma* (1982), 455 U.S. 104, 114, 71 L. Ed. 2d 1, 10-11, 102 S. Ct. 869, 876-77 (stating that the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence); *Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954.) However, as the State correctly points out, the trial judge did consider defendant's behavior on death row after his initial death sentence. At defendant's sentencing hearing, the trial judge stated:

> "It appears to me that the testimony regarding [the defendant] and what occurred in his life over the last five years is significant and *the fact that [the defendant] has indicated that he now has interests he would like to pursue, I think this shows that he has had time in which to reflect and try to decide what he is going to do.* \*\*\* I find that commendable, but I think I find it necessary, as opposed to being something that the defendant might have done when he was still on the street." (Emphasis added.)

As is evident from these comments, the trial judge did in fact consider defendant's admirable behavior while on death row. Specifically, the trial judge found defendant's interests and goals "commendable." Although the trial judge may not have ascribed the same weight to this mitigating evidence as defendant would have liked, this fact does not demonstrate that the trial judge excluded such evidence from his consideration as defendant claims. (See *Eddings v. Oklahoma* (1982), 455 U.S. 104, 114-15, 71 L. Ed. 2d 1, 11, 102 S. Ct. 869, 877 (stating that "[t]he sentencer \*\*\* may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration").) We believe that the record supports the finding of the trial judge and can discern no reason to disturb it. See *People v. Christiansen* (1987), 116 Ill. 2d 96, 122-23 (stating the rule that this court "will 'not

lightly overturn the findings of the trial court, particularly when they are amply supported by the record' " applies to findings made during the aggravation and mitigation phase of the death penalty hearing), quoting *People v. Brownell* (1980), 79 Ill. 2d 508, 539-40.

Regarding defendant's assertion that the trial judge erred in concluding that defendant did not appreciate the seriousness of his crimes because defendant did not request the trial judge to sentence him to life in prison as opposed to death, we disagree. After hearing the evidence in aggravation and mitigation, the trial judge concluded: "[T]he defendant, in not indicating to me whether or not he believed either sentence is appropriate, leads me to believe that he has not at this point come to realize the seriousness *** of the offenses with which he is charged ***." The trial judge based this conclusion on defendant's own statements while testifying in mitigation. Specifically, defendant stated:

> "*I never made a request of the Court to sentence me to natural life or to death. That's for your Honor to decide. I didn't plead guilty solely to get natural life. That's not my intention. Whatever the Court feels appropriate, then that's what should be done.* However, I do feel that if I were given natural life, okay, I would have more time to accomplish my objectives, okay." (Emphasis added.)

In response to the trial judge's question of whether defendant had a sentencing preference, defendant stated:

> "Because of my goals and my objectives, natural life would facilitate my objectives. But I'm not the Judge. I cannot make a determination. I don't know the law as well as you do, and whatever you feel is appropriate."

Defendant's statements indicate to us that he never expressed a sentencing preference. In fact, when the trial judge specifically asked defendant what his sentencing preference was, defendant replied that it was what-

ever the trial judge deemed appropriate. Defendant's statement that he could accomplish his goals if given a sentence of natural life is not comparable to a request for a specific sentence. Thus, we do not find that the trial judge erred in determining that defendant may not have appreciated the seriousness of his crimes because he did not ask the trial court to sentence him to natural life.

Next, defendant argues that he was denied due process and his eighth amendment right to a fair sentencing hearing when the State's Attorney argued that defendant should be sentenced to death because he might escape from prison. In so arguing, defendant relies on this court's prior holdings in *People v. Mahaffey* (1989), 128 Ill. 2d 388, and *People v. Holman* (1984), 103 Ill. 2d 133. In *Mahaffey*, this court held that the prosecutor's statement—"[w]hen they tell you that they will spend the rest of their lives in prison, there's no guarantee"—was proper because it was based on the evidence adduced at the sentencing hearing. (See *Mahaffey*, 128 Ill. 2d at 429.) The evidence at the sentencing hearing showed that the defendant had previously escaped from Cook County jail while awaiting trial, and that the defendant, when asked whether he would attempt to escape again, stated "I don't know." In *Holman*, this court held that the prosecutor's statement at the sentencing hearing that the defendant might escape from prison and kill again if he were not sentenced to death was improper because there was no evidence to support that assertion. See *Holman*, 103 Ill. 2d at 161-64.

The State, on the other hand, argues that the State's Attorney never argued that defendant should be sentenced to death because he was an escape risk. Rather, the State's Attorney argued that defendant's attempted escape from the Cook County jail in January 1983 while

awaiting his first trial in this case indicates defendant's disrespect for law enforcement. We agree with the State.

The record reveals that during arguments in aggravation and mitigation, the State's Attorney stated:

> "[Defendant's] prior convictions and his attempt to escape from confinement, go hand-in-hand, as we see it, because they tell this court something about *defendant's lack of respect for law enforcement officials* \*\*\*.
>
> The defendant's attempt to escape from custody is also probative, we feel, of his future probable conduct if in fact he is sentenced to the Department of Corrections. *The mere fact that the defendant attempted to escape from lawful custody shows a marked disrespect for law enforcement and a contempt for the judicial system that had ordered him to remain in custody until certain conditions were met.*" (Emphasis added.)

As these comments indicate, the State's Attorney did not allege that defendant should be sentenced to death because he was an escape risk. Rather, these comments stressed the obvious—that defendant's prior escape attempt showed a lack of respect for law enforcement. The State's Attorney's comments certainly were not improper under our holding in *Mahaffey* and *Holman*, as they were based on evidence adduced at the sentencing hearing.

Next, defendant argues that he is entitled to a new sentencing hearing because no presentence investigation report is required by the death penalty statute, whereas one is required before a sentence may be imposed in other felony matters. (See *People v. Youngbey* (1980), 82 Ill. 2d 556; Ill. Rev. Stat. 1987, ch. 38, par. 1005—3—1.) According to defendant, this incongruity is unconstitutional. In addition, defendant argues that because the trial judge permitted him to waive the preparation of the presentence investigation report, no report was ever prepared for his other felony convictions in violation of sec-

tion 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—3—1).

We disagree. As the State points out, this issue has previously been decided by this court. Most recently, in *People v. Bean* (1990), 137 Ill. 2d 65, 136-37, this court restated that presentence investigation reports are not required in capital murder cases. (See also *People v. Madej* (1985), 106 Ill. 2d 201, 211-12; *People v. Gacy* (1984), 103 Ill. 2d 1, 106; *People v. Gaines* (1981), 88 Ill. 2d 342, 373.) This conclusion also applies even though the defendant is convicted of other felonies in addition to murder which normally would require the preparation of a presentence investigation report. (See *Bean*, 137 Ill. 2d at 136-37.) The reason that no presentence investigation report is required in capital murder cases is that:

> "the sentencing judge received information during the trial and the death penalty hearing that was the substantial equivalent of any information about the defendant's background, criminal history, and physical and mental condition that would have been included in a presentence investigation report." *Bean*, 137 Ill. 2d at 137.

In addition, we note that defendant does not allege that he was prejudiced. He does not claim that there was any information relevant to the trial judge's sentencing decision that was not reported during the sentencing hearing but would have been included in a presentence investigation report. See *Bean*, 137 Ill. 2d at 137.

Next, defendant contends, and the State concedes, that his two convictions for conspiracy to commit murder must be vacated because a person may not be convicted for the both the inchoate and the principal offense. (See Ill. Rev. Stat. 1987, ch. 38, par. 8—5; *People v. Hill* (1980), 78 Ill. 2d 465.) Since defendant was convicted of two counts of murder, his convictions and sentences for the inchoate offense of conspiracy to commit murder are vacated.

We now consider defendant's remaining arguments regarding the constitutionality of the Illinois death penalty statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—1). As to each of defendant's arguments, we reaffirm our prior holdings that the Illinois death penalty statute is constitutional.

Defendant first argues that the Illinois death penalty statute violates the eighth and fourteenth amendments (U.S. Const., amends. VIII, XIV) because it places the burden on defendant to prove that death should not be imposed. This court has confronted this issue, and has deemed it meritless. See *People v. Bean* (1990), 137 Ill. 2d 65, 138-39; *People v. Whitehead* (1987), 116 Ill. 2d 425, 465.

Next, defendant argues that the Illinois death penalty statute is unconstitutional because it does not sufficiently minimize the risk of arbitrarily or capriciously imposed death sentences. Again, this court has addressed this issue, and has found it meritless. See *People v. Nitz* (1991), 143 Ill. 2d 82, 136-37; *People v. Albanese* (1984), 104 Ill. 2d 504; *People v. Kubat* (1983), 94 Ill. 2d 437.

For the reasons set forth above, we affirm defendant's convictions and sentence of death. We vacate defendant's conviction and sentence of imprisonment for conspiracy to commit murder. The clerk of this court is directed to enter an order setting Tuesday, May 12, 1992, as the date on which the sentence of death entered by the circuit court of Cook County shall be carried out. The defendant shall be executed in the manner provided by law (Ill. Rev. Stat. 1989, ch. 38, par. 119—5). The clerk of this court shall send a copy of the mandate to the Director of Corrections, the warden of Stateville Correctional Center, and the warden of the institution where the defendant is confined.

*Affirmed in part*
*and vacated in part.*