NOTICE

Decision filed 05/09/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220298-U

NO. 5-22-0298

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 14-CF-166 |
| | ) | |
| ROGER PERKINS, | ) | Honorable |
| | ) | M. Don Sheafor Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Vaughan and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's third-stage dismissal of defendant's amended postconviction petition where postconviction counsel did not err in failing to advance a nonmeritorious claim; where defendant failed to allege specific coercive conditions at the jail that caused his guilty plea to be involuntary; and where defendant failed to prove by a preponderance of evidence that he suffered a substantial denial of a constitutional right.

¶ 2    The defendant, Roger Perkins, entered into a negotiated plea agreement wherein he agreed to plead guilty to one count of drug manufacturing in exchange for the State dismissing the remaining counts. He was sentenced to 24 years in prison. The defendant appeals from the circuit court's dismissal of his postconviction petition after a third-stage evidentiary hearing held pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). The defendant argues on appeal that the circuit court erred in dismissing his postconviction petition following a third-

1

stage evidentiary hearing and that he did not receive reasonable assistance of postconviction counsel. For the following reasons, we affirm.

¶ 3                                I. Background

¶ 4     The defendant, Roger Perkins, was charged by information with three Class X felonies: count I, manufacturing of more than 100 grams but less than 400 grams of methamphetamine, subject to a term of imprisonment from 9 to 40 years (720 ILCS 646/15(a)(2)(C) (West 2014)); count II, manufacturing of more than 900 grams of methamphetamine, subject to a term of imprisonment from 15 to 60 years (*id.* § 15(a)(2)(E)); and count III, unlawful possession of more than 900 grams of methamphetamine, subject to a term of imprisonment from 10 to 50 years (§ 60(b)(6)).

¶ 5     At his first appearance hearing held on November 21, 2014, the defendant was in the custody of the Illinois Department of Corrections (IDOC) serving a sentence for second degree murder. At the hearing, the Honorable James Roberts appointed two public defenders, David Grigsby and Erin Mattson, to represent the defendant because Grigsby was set to retire within a few weeks of the appointment. Judge Roberts gave the defendant an opportunity to meet with Grigsby prior to the defendant being remanded back to IDOC.

¶ 6     On January 13, 2015, Mattson filed a motion on behalf of the defendant for substitution of Judge Roberts, arguing that when Judge Roberts was the state's attorney, he prosecuted the defendant in case No. 03-CF-261 for second degree murder. The defendant contended that he could not receive a fair trial because Judge Roberts was prejudiced against him. Following a hearing, the circuit court took the matter under advisement. On March 9, 2015, Judge Stanley Brandmeyer, on assignment from another county, denied the defendant's motion.

2

¶ 7    On January 4, 2016, the defendant filed a "motion to vacate appointment of counsel" alleging, among other things, that Mattson was "depriving [him] of a fair trial" because she would not file the motions he requested her to file; she had met with him 7 times in the 14 months since she was appointed to represent him; Mattson had not yet won a motion in his case; Mattson would not give him "the right answers" to his questions; and he was "being set up" and Mattson was working with the State to do so. The defendant also alleged that Mattson told him he was being set up because of his brother who recently had received a lengthy prison sentence. On February 4, 2016, the defendant filed a second motion seeking appointment of new counsel. In addition to the defendant's insistence that he wanted new counsel, he stated that he was bipolar, would hear voices, and had been seen by several doctors in the past.

¶ 8    On February 5, 2016, a hearing was held on the defendant's motion for substitution of appointed counsel. The defendant stated that he had been on a number of medications for his mental health issues over the past 35 years. He also stated that he was on medications while he was in IDOC and had seen doctors there three or four times a month. While the defendant reported that he currently was taking bipolar medication, he also told the court that he had not received his medication after he was transferred to the county jail from IDOC. He stated that he continued to hear voices "on and off." The defendant asked the court if he could get a "medical evaluation." The defendant also reported that he and Mattson were at odds regarding Mattson's trial strategy.

¶ 9    Mattson told the court that prior to the hearing she was unaware of the defendant's mental health and medication issues. Mattson indicated to the court that she and the defendant had disagreed over trial strategy as it related to calling certain witnesses to testify. Mattson stated that she had conducted an extensive interview of one of the witnesses named by the defendant. The defendant acknowledged to the court that prior to his motion, he did not tell the court or his attorney

3

or anyone at the jail that he had been hearing voices or that he needed an evaluation because he did not know he was supposed to do so. The circuit court did not order a medical evaluation, despite the defendant's claims about his mental health, finding that the defendant appeared to be "fully lucid," aware of his surroundings and responsive to the court's questions. The circuit court allowed Mattson to withdraw as counsel and reappointed Grigsby who was now in private practice.

¶ 10    On February 12, 2016, Grigsby filed a petition seeking a pretrial mental health examination of the defendant. At the hearing, Grigsby presented records from a "Dr. Green" with Maple Street Clinic who previously had seen the defendant and a list of medications that had been prescribed to the defendant in 2014.[1] Additionally, by agreement of the parties, the State proffered evidence that if called as witnesses, jail staff would testify that they had not noticed any signs that the defendant was experiencing either audio or visual hallucinations. After considering the statements of the parties and his own observations of the defendant during the pendency of the case, Judge Roberts denied the defendant's petition. However, Judge Roberts also noted that Grigsby could renew the defendant's request for a mental health examination if the defendant became unable to assist in his defense due to mental health deficiencies.

¶ 11    On June 6, 2016, the defendant filed a *pro se* motion to vacate the appointment of Grigsby, arguing, among other things, that Grigsby failed to file a number of motions requested by the defendant. On June 8, 2016, at a pretrial hearing, Judge Roberts addressed the defendant's motion to vacate the appointment of his counsel. Judge Roberts spent considerable time addressing the defendant's claims, outlined attorney Grigsby's duties and obligations, and admonished the defendant on the options available to him should he elect to represent himself. The State noted that it would not agree to any further continuance of the jury trial set for the end of the month. Grigsby

---

[1]Neither the medical records nor the list of medications was part of the record on appeal.

4

agreed to meet with the defendant to see if they could reach an agreement on whether Grigsby would continue to represent him. The matter was set for a status hearing.

¶ 12    At the June 15, 2016, status hearing, the defendant indicated to Judge Roberts that after further discussions with attorney Grigsby, he wished to withdraw his motion to vacate the appointment of counsel. Grigsby reported to the court that through negotiations with the State, they had reached a fully negotiated plea agreement wherein the State would file a second amended count I, which reduced the amount of the substance to more than 15 but less than 100 grams of methamphetamine, and would dismiss the other counts in exchange for the defendant pleading guilty to the amended count I. Pursuant to the plea agreement, the defendant would be sentenced to 24 years' imprisonment in IDOC followed by 3 years of mandatory supervised release. The defendant executed a jury waiver and plea of guilty. As a factual basis for the plea, the State indicated that police officers would testify that when they became aware that the defendant might be manufacturing methamphetamine, they went to a residence where the defendant was staying and were given permission to enter. The officers would testify that they heard movement in an outside shed and discovered the defendant in the shed. They would further testify that upon searching the defendant, they discovered a substance in one of the defendant's pockets which later was determined by forensic testing to contain methamphetamine. In the other pocket, the officers discovered 20 white tablets later determined to be pseudoephedrine. After the defendant was taken into custody, a further search of the shed revealed containers with various amounts of substances that later tested positive for methamphetamine. After admonishing the defendant, the circuit court accepted his guilty plea. The defendant did not file a motion to withdraw his guilty plea.

¶ 13    On June 16, 2017, the defendant filed a *pro se* postconviction petition alleging, *inter alia*, ineffective assistance of plea counsel Grigsby and that the circuit court refused to determine his

5

fitness. On July 10, 2017, the defendant filed an amendment to his *pro se* postconviction petition. On August 24, 2017, the defendant filed a motion for leave to amend his postconviction petition. The circuit court appointed postconviction counsel and set the matter for hearing. Appointed postconviction counsel had a conflict. Ultimately, Attorney Trent West was appointed as postconviction counsel to represent the defendant.

¶ 14     On May 23, 2019, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) and a second amended petition which incorporated the defendant's claim from his two prior *pro se* postconviction petitions. Postconviction counsel noted that, "The failure to address arguments in said petitions within this document is in no way a waiver of such arguments." In the petition, postconviction counsel asserted, among other things, that defendant's plea was not freely and voluntarily made due to ineffective assistance of plea counsel for a number of reasons, including that the defendant "has a history of depression, schizophrenia and anxiety, as shown by Exhibit A, his medical records from the Montgomery County jail."

¶ 15     On July 19, 2019, the State filed a motion to dismiss the defendant's amended petition for postconviction relief. In its motion, the State countered that although the defendant alleged that he had a history of depression, schizophrenia, and anxiety, his medical records from the Montgomery County jail attached to the petition did not support this claim. Thus, while the defendant may have suffered from these illnesses in the past, the records dated a month before he pled guilty determined that the defendant was alert, showing a logical thought process, and was not suffering from any mental health issues at the time.

¶ 16     On August 15, 2019, the defendant filed a response to the State's motion to dismiss his amended postconviction petition, alleging that evidence of pressure to plead guilty by the defendant's plea counsel would not have been in the record as it was a discussion held outside of

6

court between attorney and client, citing *People v. Willis*, 50 Ill. App. 3d 498, 505 (1977) ("If the reasons why a guilty plea was involuntarily made are necessarily outside the record, and not denied by the State, an evidentiary hearing is required."). The defendant also alleged that he was on Zoloft, a drug to treat depression and anxiety, at the time of his plea and the month prior.

¶ 17    On September 20, 2019, a hearing was held on the State's motion to dismiss the defendant's second amended postconviction petition. At the hearing, postconviction counsel argued that the defendant's plea counsel was ineffective and thus the defendant felt coerced and pressured to plead guilty; that the defendant was told that he was placed in solitary confinement because his brother Lloyd was also at the jail and the two of them needed to be separated and that being placed in solitary confinement contributed to the depression and anxiety that he was suffering from and for which he was being treated with prescription medication; and that based on these things, his plea was not voluntary.

¶ 18    Following the State's motion to dismiss the amended postconviction petition, the circuit court advanced the petition to a third-stage evidentiary hearing on only two issues: (1) whether the defendant pled guilty prior to the alleged meth being tested (which turned out to be incorrect); and (2) what plea counsel told the defendant prior to him pleading guilty to determine whether plea counsel had pressured the defendant.

¶ 19    On February 17, 2021, a third-stage evidentiary hearing was held on the defendant's second amended petition. Plea counsel Grigsby was called as a witness. Grigsby recalled being appointed to represent the defendant and recalled that he had represented the defendant in the past; however, he did not recall much more than that. Grigsby did not recall any conversations with the defendant prior to his guilty plea.

¶ 20　The defendant testified that Grigsby told him that he did not have a defense and that his best bet was to take the plea agreement. He also testified that Grigsby told him that by pleading guilty, he would be able to get out of segregation in the county jail. The defendant had been in segregation for 13 months which he testified put him under a lot of stress. He stated that he did not know why he was placed in segregation but speculated that he had been placed there because his brother had been in the same jail and "was tearing up everything in the county jail." The defendant testified that in trying to get him to accept the plea agreement, Grigsby suggested that the defendant might not want to go in front of Judge Roberts who one week prior had sentenced his brother to a lengthy term of imprisonment. Ultimately, the defendant and Grigsby got into an "altercation" and the defendant had to be taken back to his cell in segregation. The defendant testified that he accepted the plea agreement because he "just wanted to get out of there," he was under a lot of stress, he had not been on his medications for 13 months, and he "couldn't take it no more." The defendant testified that the things Grigsby told him made him made him feel that he had no choice but to accept the plea agreement even though he did not want to go to prison for 24 years.

¶ 21　On May 3, 2022, following the evidentiary hearing, the circuit court granted the State's motion to dismiss the amended postconviction petition, finding that Grigsby did not coerce the defendant into pleading guilty. A notice of appeal was timely filed on May 12, 2022.

¶ 22　　　　　　　　　　　　　　II. Analysis

¶ 23　　　　　　　　　A. Ineffective Assistance of Counsel Claim

¶ 24　For the first time on appeal the defendant argued that postconviction counsel failed to file a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), and that the record did not show postconviction counsel's substantial compliance with Rule 651(c) because he failed to adequately present one of the defendant's *pro se* claims, *i.e.*, that the defendant was unfit to

8

plead guilty. After the defendant's initial brief was filed, the State filed a motion to supplement the record with an undated Rule 651(c) certificate from postconviction counsel, which this court granted. Thereafter, the defendant filed an objection to the State's motion to supplement the record on appeal and requested reconsideration of the order allowing the motion on the same basis as set forth in his opening brief. We elected to take up the defendant's objection to the State's motion with the case.

¶ 25    The Post-Conviction Hearing Act (Act) provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the criminal proceedings took place. 725 ILCS 5/122-1(b) (West 2018). The postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. *Id.* § 122-2.

¶ 26    "The Act provides a three-stage mechanism for a defendant to advance such a claim." *People v. Addison*, 2023 IL 127119, ¶ 18. "At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit." *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2018). Thereafter, if the petition is not summarily dismissed, it must be set for further consideration in the second stage. *Addison*, 2023 IL 127119, ¶ 18; 725 ILCS 5/122-2.1(b) (West 2018).

¶ 27    "The second stage of postconviction review tests the legal sufficiency of the petition." (Internal quotation marks omitted.) *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 12. At this stage, the petitioner's allegations are taken as true, unless affirmatively refuted by the record; then, the question becomes whether the allegations establish a constitutional violation. *Id.* At the second

9

stage, the petitioner bears the burden of making a substantial showing of a constitutional violation. *Id.* "If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009). "The purpose of the first two stages is to determine whether an evidentiary hearing is even necessary." *People v. Fields*, 2020 IL App (1st) 151735, ¶ 42.

¶ 28    At the third-stage evidentiary hearing, the circuit court "may receive proof by affidavits, depositions, oral testimony, or other evidence." 725 ILCS 5/122-6 (West 2018). At this stage, a defendant must prove by a preponderance of the evidence that he suffered a substantial denial of a constitutional right. *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006). When a postconviction petition has been advanced to a third-stage evidentiary hearing, where fact-finding and credibility determinations are made, a reviewing court will not reverse a circuit court's decision as to whether there has been a substantial showing of a constitutional violation unless that finding is manifestly erroneous. *Id.* at 473. A manifest error is one that is clearly evident, plain, and indisputable. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002).

¶ 29    Pursuant to Rule 651(c), "[p]ostconviction counsel must consult with the defendant to ascertain his contentions of deprivation of constitutional rights, examine the record of the proceedings and the trial, and make any amendments to the *pro se* petition that are necessary to adequately present the defendant's contentions." *People v. Urzua*, 2023 IL 127789, ¶ 33. However, it is not necessary for counsel to amend a *pro se* petition if the amendment "would only further a frivolous or patently nonmeritorious claim." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). Rule 651(c) does not govern postconviction counsel's performance during the third-stage hearing; rather, "that performance is measured by the overarching reasonableness standard generally applicable to a postconviction proceeding." *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 35.

10

¶ 30    Although we allowed the State to supplement the record on appeal with the undated 651(c) certificate, it does not change the outcome given the procedural posture of the instant case; that is, dismissal of the defendant's amended postconviction petition following a third-stage evidentiary hearing. Illinois courts have "expressly held that Rule 651(c) does not apply once a postconviction petition has been advanced to the third stage." *Id.* ¶ 27 (citing *People v. Marshall*, 375 Ill. App. 3d 670 (2007)). A thorough examination of the record reveals that at the second stage of the proceeding, postconviction counsel complied with Rule 651(c) when he consulted with the defendant, examined the record, and amended the petition as necessary to adequately present the defendant's claims from his *pro se* petitions.

¶ 31    Nevertheless, the defendant contends that postconviction counsel failed to adequately present his *pro se* claim that he was unfit to plead guilty. We reject the defendant's contention and find it was not necessary for postconviction counsel to further this nonmeritorious claim in the amended petition as the defendant's fitness was raised on two occasions prior to his guilty plea. The first was at the hearing on the defendant's motion for substitution of appointed counsel where the defendant revealed for the first time that he had been on a number of medications for mental health issues over the past 35 years, and he reported to the circuit court that he had been hearing voices "on and off." The second time was at the hearing on the defendant's petition seeking a pretrial mental health examination filed by Grigsby where the defendant presented records from Dr. Green and a medication list from 2014. Both times the circuit court denied the defendant's requests for a mental health examination, although the second time the circuit court noted that the defendant could renew his request if he became unable to assist in his defense.

¶ 32    A defendant is presumed to be fit to stand trial, or to plead guilty, and be sentenced. 725 ILCS 5/104-10 (West 2016). A defendant is unfit where he is unable to understand the nature and

11

the purpose of the proceedings against him or to assist in his defense. *Id.* The issue of the defendant's fitness may be raised at any time by the defense, the State, or the circuit court. *Id.* § 104-11(a). Once a *bona fide* doubt as to the defendant's fitness is raised, the circuit court shall order a determination of the issue before proceeding further. *Id.*

¶ 33    In determining whether a *bona fide* doubt as to the defendant's fitness exists, our state supreme court has identified relevant factors which a trial court may consider such as a defendant's " 'irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.' " *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). There are " 'no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.' " *Id.* (quoting *Drope*, 420 U.S. at 180). A defendant may be found fit although his mind may be otherwise unsound. *Id.* at 519. The determination as to whether there is a *bona fide* doubt of the defendant's fitness rests largely within the discretion of the trial court which, unlike a reviewing court, is in a position to observe the defendant and evaluate his conduct. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 53. An abuse of discretion exists only where a trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 34    After reviewing the relevant factors in the context of the record on appeal, we cannot say that the circuit court's denial of the defendant's requests for a fitness hearing prior to his guilty plea was manifestly erroneous. Furthermore, we do not find that postconviction counsel erred in failing to advance this nonmeritorious claim in the amended petition.

¶ 35                    B. Voluntariness of Defendant's Guilty Plea

¶ 36    The defendant next contends that the circuit court erred in dismissing his postconviction claim that his guilty plea was involuntary. The State counters that the defendant's failure to timely file a motion to withdraw his guilty plea pursuant to Illinois Supreme Court Rule 604(d) resulted in forfeiture, citing *People v. Wright*, 337 Ill. App. 3d 759, 761 (2003) (a defendant waives right to appeal a guilty plea under Rule 604(d) unless he files a timely motion to withdraw the guilty plea and a timely notice of appeal). We note, however, that Rule 604(d) applies only to direct appeals and is inapplicable to collateral proceedings brought pursuant to the Act. *People v. Mathis*, 357 Ill. App. 3d 45, 49 (2005).

¶ 37    Turning to the defendant's argument on appeal, the defendant maintains that the circuit court erred in dismissing his claim because he established at the third-stage evidentiary hearing that he entered his guilty plea to escape segregation and to get mental health treatment. The act of entering a plea of guilty is "grave and solemn." *Brady v. United States*, 397 U.S. 742, 748 (1970). If a defendant is allowed to change his mind so that a jury can hear his case, the guilty plea would become "a temporary and meaningless formality reversible at the defendant's whim." *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975). Allowing a defendant to withdraw his plea is not automatic and should be based on a need to correct a manifest injustice. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009), *overruled on other grounds by People v. Walls*, 2022 IL 127965.

¶ 38    A defendant's guilty plea represents a waiver of constitutional rights, including the right to a trial by jury and the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 2432 (1969). "For a guilty plea to be constitutionally valid, there must be an affirmative showing that the plea was made voluntarily and intelligently." *People v. Urr*, 321 Ill. App. 3d 544, 547 (2001) (citing *People v. St. Pierre*, 146 Ill. 2d 494, 506 (1992)). "When a defendant claims that he only

13

pleaded guilty due to prison conditions, it does not necessarily follow that his plea was involuntary." *Id.* The defendant must allege specific instances of abuse which caused him to plead guilty, and he must sufficiently establish a nexus between the alleged violence and his plea of guilty. *Id.*

¶ 39    Rather than alleging specific instances of abuse at the jail which caused him to plead guilty, the defendant provided a number of subjective reasons for pleading guilty when he testified at the evidentiary hearing that he accepted the plea agreement because he "just wanted to get out of there," he was under a lot of stress, he had not been on his medications for 13 months, and he "couldn't take it no more." The defendant's guilty plea is not involuntary merely because it was motivated by his desire to get out of the county jail. Here, the defendant failed to allege specific coercive conditions at the jail.

¶ 40    The defendant next claims that his plea was involuntary based on the advice given by plea counsel which "had a coercive impact" on his decision to plead guilty. Specifically, the defendant maintains that plea counsel's statements that if he pled guilty he would get out of segregation and be able to get treatment, while true, were nonetheless coercive. He further claims that plea counsel's statements that Judge Roberts was biased against the defendant and that plea counsel did not have a defense for him made him feel coerced and, therefore, his guilty plea was involuntary. We note that the defendant does not raise this issue in the context of a claim of ineffective assistance of plea counsel.

¶ 41    As the circuit court found in its order dismissing the defendant's amended postconviction petition, the defendant was facing 60 to 80 years in prison, to be served at 75%. Instead, as a result of the plea agreement, he was allowed to plead guilty to the amended count with a sentence of 24 years in prison, to be served at 50%. We do not find that plea counsel's true statements to the

14

defendant made his guilty plea involuntary. Accordingly, we find that the defendant knowingly, intelligently, and voluntarily entered his guilty plea. We further find that the defendant has failed to prove by a preponderance of evidence that he suffered a substantial denial of a constitutional right.

¶ 42                                    III. Conclusion

¶ 43    For the foregoing reasons, we affirm the circuit court's dismissal of the defendant's petition for postconviction relief following a third-stage evidentiary hearing.


¶ 44    Affirmed.