**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200119-U

Order filed November 30, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0119 Circuit No. 86-CF-378 |
| SHERMAN S. GIBSON, | ) ) ) | Honorable Daniel Rippy, |
| Defendant-Appellant. | ) | Judge, Presiding |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Hauptman and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Trial court did not err when it denied defendant's motion for leave to file a successive postconviction petition; claims raised were *res judicata*.

¶ 2     Defendant Sherman S. Gibson was found guilty of first degree murder and sentenced to a term of natural life imprisonment. After unsuccessfully filing other postconviction petitions, defendant filed a *pro se* motion for leave to file his fifth successive postconviction petition. The trial court denied the motion. Defendant appealed. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant Sherman S. Gibson was charged with murder by an indictment filed January 29,

1986. Ill. Rev. Stat. 1985, ch. 38, § 9-1(a)(2). The indictment alleged that defendant, Robert Lofton

and Vernon Hicks stabbed Leon Smallwood to death with a knife. All four men were housed

together at Stateville Correctional Center (Stateville) at the time of the murder.

¶ 5        The first trial in 1986 ended in a mistrial. A second trial took place in 1987 and the jury

found defendant guilty of first degree murder. The trial court sentenced defendant to death but the

Illinois Supreme Court reversed the conviction and remanded for a new trial based on the trial

court's decision regarding defendant's right to standby counsel. See *People v. Gibson*, 136 Ill. 2d

362, 381-82 (1990).

¶ 6        A third trial took place in 1992. Larry Eckstine testified for the State. At the time of the

trial, he was in the Du Page County jail awaiting trial on charges of traffic violations, battery, retail

theft and attempted obstruction of justice. He had previously been convicted of armed robbery,

aggravated battery, unlawful use of weapons, theft (three times) and possession of a stolen motor

vehicle (two times). Eckstine testified that in October 1985, he was in the custody of the Illinois

Department of Corrections (DOC), housed in the E house at Stateville. Eckstine belonged to a

gang and defendant, Smallwood, Hicks, Lofton and Festus Brown belonged to an affiliated gang.

According to Eckstine, he violated the code of silence to which the gangs adhered by testifying

against defendant and he feared for his life. Eckstine testified that on the morning of October 15,

1985, defendant, Smallwood, Hicks and Lofton were in Smallwood's cell when he saw Lofton hit

Smallwood. Defendant was holding a shank or homemade knife above his head and Smallwood

was trying to grab the shank. On cross-examination, Eckstine acknowledged several prior

inconsistent statements he made, including whether defendant was in Smallwood's cell. At the

third trial, he explained the discrepancies, stating that he did not want to identify defendant because he was threatened by gang members. He feared retaliation, and per the investigators' promise to him, he was transferred in the next few days after his testimony.

¶ 7    Henry Burrell testified. He was in the DOC for murder and had prior convictions for robbery and aggravated battery. He had been in the Will County jail on other charges in November 1986, when defendant asked him to take some papers to Lofton, who was incarcerated at Stateville. The documents were meant to encourage Lofton to prevent Eckstine from testifying. Defendant also offered Burrell $1000 to kill Brown, who made statements against defendant. Burrell said defendant told him Smallwood was killed for trying to realign the gangs. On cross-examination, Burrell said that he did not see defendant stab Smallwood but that defendant told him in "penitentiary talk" that he had a part in the murder. Burrell acknowledged that the aggravated battery charge pending against him was dismissed in exchange for his testimony against defendant but said he would have testified against defendant even without a deal with the State.

¶ 8    Other testimony included that of Thomas McWilliams, an internal investigations unit chief at Stateville who testified regarding gangs at the prison.

¶ 9    The defense presented its case and defendant testified. He had been incarcerated since 1982. In October 1985, Smallwood was his cellmate. He did not strike or stab Smallwood. He rejected Burrell's allegations, denying that they discussed Smallwood's murder or he asked Burrell to "hit" Brown.

¶ 10    The jury found defendant guilty of murder and eligible for the death penalty. The jury then rendered a no-death verdict and defendant was sentenced to a term of natural life imprisonment. This court affirmed defendant's conviction and sentence. *People v. Gibson*, No. 3-92-0566 (1995) (unpublished order under Illinois Supreme Court Rule 23). Beginning in 1995, defendant began to

file *pro se* postconviction petitions. The first petition was dismissed on the State's motion and this court affirmed the dismissal. *People v. Gibson*, No. 3-97-0498 (1999) (unpublished order under Illinois Supreme Court Rule 23). A second petition was summarily dismissed. A third petition was also summarily dismissed, defendant appealed, and this court allowed defendant's counsel to withdraw and affirmed the dismissal. *People v. Gibson*, No. 3-03-0529 (2005) (unpublished order under Illinois Supreme Court Rule 23). Defendant moved for leave to file a fourth postconviction petition, which was denied by the trial court, and this court affirmed the denial. *People v. Gibson*, 2015 IL App (3d) 130738-U. Defendant filed another motion for leave to file a fifth postconviction petition, which the trial court denied. This court allowed counsel to withdraw and affirmed the denial. *People v. Gibson*, No. 3-17-0788 (2019) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11        On January 27, 2020, defendant filed another motion for leave to file a successive postconviction petition. The petition alleged that defendant's due process rights were violated when the State knowingly used perjured testimony. The petition further alleged that defendant's conviction resulted from prosecutorial misconduct. Defendant argued that Eckstine tried to contact defense counsel but was then transferred to another jail and was unable to talk to defendant's attorney. The petition further alleged defendant was wrongly convicted of Smallwood's murder. Attached to the petition were affidavits by inmates Jimmie Smith, Marvin Bryant, Eugene Horton and Ivory Loyd, a written statement from Brown and two affidavits from defendant. The trial court denied leave, finding defendant could not establish there would be "a substantial [*sic*] different outcome at trial." Defendant appealed and counsel was appointed to represent him.

¶ 12                                        II. ANALYSIS

4

¶ 13    The issue on appeal is whether the trial court erred when it denied defendant's motion for leave to file a successive postconviction petition. Defendant argues that his petition for leave and its supporting documents state a colorable claim of actual innocence and that the trial court erred when it denied his motion for leave to file a successive postconviction petition. He asks this court to remand the case for second-stage postconviction proceedings.

¶ 14    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et. seq.* (West 2020)) provides an avenue for an inmate to collaterally attack his conviction based on a substantial denial of his constitutional rights. The Act contemplates the filing of one petition but allows for successive petitions to be filed with leave of court. *Id.* § 122-1(f). The bar against successive petitions will be relaxed in two circumstances: (1) where the petitioner can demonstrate "cause and prejudice" for a failure to raise his claims sooner or (2) where the petitioner establishes a fundamental miscarriage of justice, that is, actual innocence based on newly discovered or newly available evidence. *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23. For evidence to be newly discovered, it must not have been available at the original trial, it could not have been previously found by the defendant's diligence, and it must be of such conclusive character that it would have changed the trial's result. *People v. Morgan*, 212 Ill. 2d 148, 154 (2004).

¶ 15    To obtain leave under the second basis, a defendant must make a "colorable claim" of actual innocence, establishing a probability that it is more likely than not that no reasonable juror would have convicted him had the jury members known of the new evidence. *Edwards*, 2012 IL 111711, ¶ 33. Where it is clear as a matter of law that a petitioner cannot demonstrate a claim of actual innocence, leave to file a successive petition should be denied. *Id.* ¶ 24.

¶ 16    In his motion for leave, defendant argues that the State knowingly used perjury to obtain his conviction, committed prosecutorial misconduct, and violated his due process rights.

5

Specifically, defendant points to the testimonies on the State's behalf of Eckstine and Burrell as known perjury. He also maintains the State prevented Eckstine from contacting defense counsel. On appeal, he asks this court to extrapolate his claims that the witnesses lied at trial into a claim of actual innocence. In support of his request, defendant urges this court to liberally construe his motion for leave, relying on *People v. Thomas*, 2014 IL App (2d) 121001. In *Thomas*, the court discussed the liberal construction to be given to a postconviction petition, not to the motion to file a successive postconviction petition. *Id.* ¶ 48. *Thomas* does not instruct that liberal construction should be extended to consideration of arguments not presented. *Id.* ("Liberal construction does not mean that we distort reality.").

¶ 17        We find defendant's motion for leave does not allege actual innocence. *People v. Williams*, 394 Ill. App. 3d 236, 243 (2009) (finding leave requirement to be "a procedural prerequisite to obtaining review on the merits" and the "failure to meet the requirements of the statute means that neither the trial court nor the reviewing court should consider the merits of the petition"). To allege actual innocence, defendant must establish that the evidence in support of his claim was " 'newly discovered'; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial." *Edwards*, 2012 IL 111711, ¶ 32 (quoting *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009)). Defendant's motion for leave to file his successive postconviction petition does not present evidence that is newly discovered, material and not cumulative, and that would change the result on retrial.

¶ 18        The claims of known perjury and prosecutorial misconduct raised in defendant's motion for leave have been heard and decided by the trial court and this court and are *res judicata*. *Id.* ¶ 21 (*res judicata* bars claims that were previously raised or could have been previously raised). Defendant argued in his direct appeal that Eckstine's testimony was perjury, which was known by

the State. This court rejected his arguments. *Gibson*, No. 3-92-0566. In his initial postconviction petition, filed July 25, 1995, defendant asserted, in part, that trial counsel was ineffective because he did not call Brown to testify that Eckstine had lied. He did not, however, reargue the claim in his amended petition filed January 21, 1997. The trial court dismissed the petition and this court affirmed the dismissal of the petition. *People v. Gibson*, No. 3-97-0498.

¶ 19    Defendant filed his first successive postconviction petition on March 27, 1998, again alleging ineffective assistance for counsel's failure to call Brown to testify that Eckstine lied on the witness stand. Attached to the petition was statement from Brown, dated August 12, 1997, which defendant characterized as containing newly discovered evidence. In the statement, Brown seems to describe his interactions with Eckstine concerning Smallwood's murder. Also attached to the petition was defendant's affidavit, attesting that he received Brown's statement in March 1998. He attached a second affidavit in which he attested that he asked his attorney to call Brown as a witness and to raise a speedy trial violation. The trial court dismissed the petition on *res judicata* grounds because defendant had raised or could have raised the same issues in his initial postconviction petition.

¶ 20    Defendant filed a second successive postconviction petition on May 12, 2003, arguing, in part, that the State knowingly used false testimony of Eckstine, Burrell and McWilliams, the gang expert. Attached to the petition was Brown's statement. The trial court dismissed the petition. Defendant appealed and this court allowed defense counsel to withdraw and affirmed the dismissal. *Gibson*, No. 3-03-0529.

¶ 21    Defendant filed a third successive postconviction petition on November 13, 2012, in which he alleged, in part, actual innocence based on the attached affidavits which defendant argued constituted newly discovered evidence exonerating him. He further argued, *inter alia*, ineffective

7

assistance based on counsel's failure to investigate the witnesses whose affidavits he attached and that the State presented known false testimony. Attached to the petition were affidavits from defendant and Smith, a settlement agreement between Horton and Stateville, a grievance defendant filed with the DOC regarding defendant's attempts to obtain Horton's affidavit, and a motion for emergency violent crime victim assistance and protection seeking protection for Horton, Smith and Lofton, who would then agree to be witnesses. Defendant subsequently added an affidavit from Horton in further support of his petition.

¶ 22    Defendant's affidavit, dated October 18, 2012, averred that he was innocent; that he saw Lyons, a "very dangerous gang chief," leave Smallwood's cell with a bloody shank and shirt, and that Lyons came over to him in the phone line, punched him in the face and warned him to remain quiet or he would beat him with a pipe and cut him into little pieces. Defendant did not come forth sooner because of fear of death but he did confide in Horton in 1992 and 2012.

¶ 23    Smith's affidavit, dated October 15, 1985, attested that Smith and Eckstine were called to the internal affairs office at Stateville and offered favors to testify they saw defendant stab Smallwood. Smith declined but Eckstine accepted the offer and was not given a ticket for being off his assigned gallery. Smith did not come forth sooner because he feared retaliation from prison officials, police and prosecutors.

¶ 24    Horton's affidavit stated that he would like to be a witness regarding the murder but the wretched state of the prison increased his risk of being attacked and suffering fear and nightmares, thus preventing him from testifying. He referenced an attached settlement agreement between himself and the DOC regarding inadequate DOC response time to assaults and that "notorious killer and gang chief" Lyons made verbal and written admissions to Horton that he killed Smallwood. He did not have the note from Lyons but remembered it verbatim as stating:

8

"I told you and [defendant] not to ever talk about my involvement in the murder of *** inmate Smallwood. Stop it or I will do what I promised both of you, have you beat with pipes and cut up into small pieces."

¶ 25 The trial court accepted the petition as motion for leave to file a successive postconviction petition and denied it, finding it did not make a sufficient showing of actual innocence. Defendant appealed, arguing, in part, that the affidavit evidence should be considered newly discovered because the affiants previously remained silent out of fear. *Gibson*, 2015 IL App (3d) 130738-U. This court found Horton's affidavit did not contain newly discovered evidence and was inadequate to support a claim of actual innocence and that defendant's affidavit was not newly discovered evidence because he knew about Lyons' involvement at the time of his trial. *Id.* ¶¶ 24, 27. This court determined that, at best, the Horton affidavit indicated that Lyons planned Smallwood's murder but did not negate that he could have participated in it. *Id.* ¶ 33. The court concluded that the petition and supporting documents could not state a claim of actual innocence, finding that defendant did not establish the evidence was newly discovered or could not have been previously discovered with due diligence. *Id.* This court affirmed the dismissal of defendant's motion for leave to file a successive petition. *Id.* ¶ 35.

¶ 26 Defendant filed another successive postconviction petition on October 4, 2017, alleging the State knowingly used the perjured testimony of Eckstine and engaged in prosecutorial conduct when it prevented Eckstine from contacting defense counsel. In support of his claims, defendant alleged that Eckstine called defendant's trial counsel from the Du Page County jail but did not reach him. The State learned of the call and had Eckstine transferred to another jail so he could not speak to defendant's attorney. The trial court denied the petition, finding it did not establish cause

9

and prejudice. Defendant appealed and this court affirmed the judgment and allowed the appellate defender to withdraw. *Gibson*, No. 3-17-0788.

¶ 27 Defendant moved to file the successive postconviction petition at issue on January 27, 2020, which repeated the allegations in the motion for leave to file a successive petition which defendant filed on October 4, 2017. In both petitions, defendant argued that he was denied due process where "[t]he prosecutor knowingly used perjured testimony to obtain a conviction, the prosecutor knew or should have known the testimony was false and prejudice resulted." He further argued that his conviction was based on prosecutorial misconduct due to the interference by the State in Eckstine's attempts to contact defense counsel. Attached to the petition were a number of documents in support of defendant's motion.

¶ 28 The first supporting document was a trial court order dated May 22, 1992, stating that "having testified," Eckstine was to be housed in the Du Page County jail, not Will County. This document was provided to defendant when the court entered the order in 1992 and it was attached to defendant's October 2017 motion to file a successive postconviction petition. Similarly, the supporting affidavits of Smith and Horton and the statement from Brown, were attached to prior postconviction pleadings. The same affidavits from Smith and Horton were attached to defendant's third successive postconviction petition dated November 13, 2012. Brown's statement was originally attached to defendant's first successive postconviction petition dated March 27, 1998. The affidavits and statement do not constitute newly discovered evidence.

¶ 29 Defendant also attached two of his own affidavits, one dated January 29, 2016, and one dated October 18, 2012. In the 2016 affidavit he averred that he saw Lyons with a bloody shank, that Lyons punched him and was a notorious and dangerous gang leader and killer, and that Burrell and Eckstine were "opportunistic criminals" who would give information in exchange for

10

privileges. Defendant's 2012 affidavit attested to the same claims regarding Lyons and added that defendant was innocent but fearful to share his information, although he told Horton in 1992 and 2012.

¶ 30    Two affidavits not previously included with defendant's postconviction pleadings were presented. Bryant, in an affidavit dated August 29, 2018, attested that he was in Stateville in 1988 and had a conversation with Burrell, with whom he had been friends since 1983 when they met in prison. Burrell told Bryant that Burrell lied at defendant's and Lofton's trials in exchange for early release or a transfer and that Burrell knew defendant and Lofton were innocent. Bryant did not come forward sooner because he had just met defendant and Lofton at Menard Correctional Center, where they were all housed. The evidence presented in Bryant's affidavit was not new and defendant had prior knowledge about it. At defendant's trial, he argued that Burrell's testimony was false and he impeached Burrell regarding the deal he made with the State to testify and about the validity of his claims about the conversation he had with defendant in the Will County jail. In his 2012 affidavit, defendant also characterized Burrell as a liar.

¶ 31    The other new affidavit was from Loyd, dated November 22, 2017, in which Loyd attested that Lyons admitted to him on February 18, 1995, that Lyons killed Smallwood and that defendant and Lofton were not involved. Loyd further attested that Lyons "got down on [defendant] on the telephone that day." Although Lyons generally would not share such information, he and Loyd were childhood friends and housed together at Pontiac Correctional Center. As with the Bryant affidavit, the information presented in Lyons' affidavit is not newly discovered or noncumulative. Defendant attested in his 2012 affidavit and repeated the allegations that Lyons killed Smallwood and threatened him into silence in his 2016 affidavit. Of course, he was aware of this fact from the

11

day of Smallwood's murder in October 1985 and communicated it to Horton on two occasions, in 1992 and 2012.

¶ 32     Contrary to defendant's assertions in his motion for leave to file a successive postconviction petition, his latest petition did not present new evidence and did not include a claim of actual innocence. Rather, defendant raises the same issues and presents the same evidence he did in his previous unsuccessful petitions for leave to file a successive postconviction petition and postconviction petitions. Defendant cannot overcome the bar of *res judicata*. *Res judicata* and waiver limit the scope of postconviction review. *People v. Stewart*, 123 Ill. 2d 368, 372 (1988). Postconviction review of issues that were previously raised or could have been raised in the reviewing court is barred. *Id.*

¶ 33     We find none of the evidence presented by defendant in support of his latest attempt to obtain postconviction relief to be newly discovered. Having witnessed Lyons's alleged murder of Smallwood, defendant was aware of the "newly discovered evidence" at the time of trial and thereafter. Indeed, the supporting documentation has either been previously submitted or repeats facts previously submitted. The evidence is not of such conclusive character that it would have changed the results of the trial, as it was previously submitted in a number of postconviction petitions and found lacking. Accordingly, we find that defendant's postconviction petition and supporting documents cannot set forth a colorable claim of actual innocence and affirm the trial court's denial of his motion for leave to file a successive petition for postconviction relief. See *Edwards*, 2012 IL 111711, ¶ 24 ("leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provide by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence.").

¶ 34                                      III. CONCLUSION

12

¶ 35    For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 36    Affirmed.